EXHIBIT A

# COLLECTIVE BARGAINING

## *Agreement*

*between*

## League of Voluntary Hospitals and Homes of New York

*and*



## June 1, 2004 through April 30, 2008

# TABLE OF CONTENTS

| | | |
|---|---|---|
| Article I | Recognition - The Collective Bargaining Unit | .8 |
| Article II | Union Security | .9 |
| Article III | Check-Off | .10 |
| Article IV | No Discrimination | .13 |
| Article V | Union Activity, Visitation and Bulletin Boards | .14 |
| Article VI | Joint Employment Service | .15 |
| Article VII | Probationary Employees | .16 |
| Article VIII | Temporary Employees | .17 |
| Article VIIIA | Vacancies and Emergency Vacancies | .18 |
| Article IX | Seniority | .20 |
| Article IXA | Employment Security and Job Security Fund | .25 |
| Article IXB | Consolidation of Deparments and Mergers | .39 |
| Article X | Wages and Minimums | .40 |
| Article XI | Hours | .61 |
| Article XII | Weekend Scheduling | .62 |
| Article XIII | Overtime | .64 |
| Article XIV | Shifts and Shift Differentials | .65 |
| Article XV | Holidays | .66 |
| Article XVI | Vacations | .68 |
| Article XVII | Sick Leave | .70 |
| Article XVIII | Paid Leave | .72 |
| Article XIX | Unpaid Leave | .73 |
| Article XX | Past Practices | .74 |
| Article XXI | Severance Pay | .75 |
| Article XXII | League/1199SEIU Training and Upgrading Fund | .75 |
| Article XXIII | Benefit Fund | .76 |
| Article XXIV | Pension | .78 |
| Article XXV | Enforcement of Articles IXA, XXII, XXIII, XXIV, XXXVII and XLII (the Funds) | .79 |
| Article XXVI | Uniforms | .82 |
| Article XXVII | Management Rights | .82 |
| Article XXVIII | Resignation | .87 |
| Article XXIX | Discharge and Penalties | .87 |
| Article XXX | No Strike or Lockout | .88 |
| Article XXXI | Grievance Procedure | .88 |

Article XXXIA      Mediation  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .90
Article XXXIB      Contract Interpretation and Policy Committee  92
Article XXXII      Arbitration  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .93
Article XXXIII     Effect of Legislation - Separability  . . . . . . . . .95
Article XXXIV      Individual Stipulations  . . . . . . . . . . . . . . . . . . .95
Article XXXV       Supersedes MOA  . . . . . . . . . . . . . . . . . . . . . . . .96
Article XXXVI      Negotiation of Local Issues  . . . . . . . . . . . . . . .96
Article XXXVII     Child Care  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .96
Article XXXVIII    Housing  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .96
Article XXXIX      Health and Safety - Create a Safe and
                   Healthy Workplace  . . . . . . . . . . . . . . . . . . . . . . .97
Article XL         Local/Institution Labor Management
                   Committees  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .98
Article XL(A)      Professional/Technical Practice Committees  .98
Article XLI        Leon J. Davis/Martin Cherkasky Quality
                   Care Committee  . . . . . . . . . . . . . . . . . . . . . . . . .98
Article XLII       P&P Fund  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .99
Article XLIII      Effective Dates and Durations  . . . . . . . . . . . .100

EXHIBIT A          Check-Off Authorization  . . . . . . . . . . . . . .102
EXHIBIT B          Local 1199 Credit Union Check-Off
                   Authorization  . . . . . . . . . . . . . . . . . . . . . . . .103
EXHIBIT C          Political Action Fund Check-Off
                   Authorization  . . . . . . . . . . . . . . . . . . . . . . . .104
EXHIBIT D          Municipal Affiliates  . . . . . . . . . . . . . . . . . . .105
EXHIBIT E          Fund Issues  . . . . . . . . . . . . . . . . . . . . . . . . . .106
                   Attachment 1 to Exhibit E:
                   Fund Diversions  . . . . . . . . . . . . . . . . . . . . . . .111
EXHIBIT F          Residual Job Classifications  . . . . . . . . . . . .113
EXHIBIT G          QCC Language  . . . . . . . . . . . . . . . . . . . . . . .115
SCHEDULE A         . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .119
SCHEDULE B         . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .122
STIPULATION I      . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .124
STIPULATION II     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .124
STIPULATION III    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .124
STIPULATION IV     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .124
SIDE LETTERS       • re: CIPC  . . . . . . . . . . . . . . . . . . . . . . . . . .125
                   • re: 144 Minimums  . . . . . . . . . . . . . . . . . . . .126
                   • re: OLM  . . . . . . . . . . . . . . . . . . . . . . . . . . . .127
                   • re: Alternatives to Layoffs  . . . . . . . . . . . . .128

• re: Non-Discrmination . . . . . . . . . . . . . . .129

• re: NBF Contribution Rate . . . . . . . . . . .130

• re: Pension Contribution and
  ETJSP Funding . . . . . . . . . . . . . . . . . . . . . .131

• re: Maternity Leave . . . . . . . . . . . . . . . . .133

• re: Electronic Dues Transmission,
  Quality of Work Issues and Contract
  and Benefits Administration Program  .135

• re: St. Cabrini Nursing Home  . . . . . . . .137

• re: Electronic Transfer of
  Contributions and Reports  . . . . . . . . . .138

• re: Credit Union Electronic Transfers  . .139

• Attachment A: Memorandum of
  Agreement re: Union Organizing  . . . . .140

   1) Union Organizing Rights . . . . . . . .141

   2) Letter to Employees . . . . . . . . . . . . .149

   3) Letter (continued)
      re: Information Sheet &  . . . . . . . . .151
      Organizing Rules of Conduct  . . . .152

   4) Side Letter re: Limitation on
      One-on-One Conversations . . . . . .154

   5) Side Letter re: Beth Israel MC  . . . .155

   6) Side Letter re:  Attachment A
      & Exhibit F . . . . . . . . . . . . . . . . . . . .156

• re: Side Letter Concerning Certain
  League Homes . . . . . . . . . . . . . . . . . . . . . .158

• Attachment 1 . . . . . . . . . . . . . . . . . . . . . .162

• Attachment 2 . . . . . . . . . . . . . . . . . . . . . .179

• Attachment 3 . . . . . . . . . . . . . . . . . . . . . .180

Index                . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .183

## 2004-2008 1199-LEAGUE AGREEMENT

AGREEMENT made and entered into this 7th day of May, 2004, by and between the **LEAGUE OF VOLUNTARY HOSPITALS AND HOMES OF NEW YORK,** with its offices at 555 West 57th Street, New York, NY 10019 (hereinafter called the "League"), as agent for and on behalf of each of its member institutions whose names appear on Schedule A and B annexed hereto and made a part hereof (each of which is hereinafter designated as the "Employer") and **NEW YORK'S HEALTH & HUMAN SERVICE UNION 1199/SEIU** now known as **1199SEIU United Healthcare Workers East,** with its offices at 310 West 43rd Street, New York, NY 10036 (hereinafter referred to as the "Union" or "1199"), acting herein on behalf of the Employees of the said Employer, as hereinafter defined, now employed and hereafter to be employed and collectively designated as the "Employees."

### WITNESSETH:

WHEREAS, the Employer recognizes the Union as the collective bargaining representative for the Employees covered by this Agreement as hereinafter provided, and

WHEREAS, it is the intent and purpose of the parties hereto that this Agreement promote and improve the mutual interests of the patients of the Employer as well as of its Employees and to avoid interruptions and interferences with services to patients and to set forth herein their agreement covering rates of pay, hours of work and conditions of employment.

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties hereto agree as follows:

## ARTICLE I
### Recognition - The Collective Bargaining Unit

1. (a) The Employer recognizes the Union as the sole and exclusive collective bargaining representative of all of the Employees in the bargaining unit(s) set forth in a stipulation (Stipulation I) between the Union and each Employer to be annexed hereto.

(b) Excluded from each of the aforesaid bargaining units are supervisory, confidential, executive and managerial employees, physicians, dentists, registered nurses, students whose performance of work at the Employer is a part of the educational course of study such students are pursuing, part-time employees who work a total of one-fifth (1/5) of the regular full-time work week or less for the job classifications in which they work, temporary employees as defined herein, and such other employees as are listed as excluded in the stipulations hereunto annexed. Effective July 1, 1992, any employee hired to work one-fifth (1/5) or less of the regular full-time work week for his/her classification shall be an Employee covered by the Agreement if he/she works more than sixteen shifts within any period of up to thirteen weeks. Bargaining unit coverage shall be retroactive to the first day of the thirteen week period.

2. It is agreed that this contract shall apply and continue in full force and effect at any location to which the Employer may move. It is further agreed that this contract shall apply to any new or additional facilities of the Employer and under its principal direction and control within the five (5) boroughs of New York City, Nassau, Suffolk and Westchester Counties. The Employer shall give seven (7) days notice to the Union subsequent to the completion of arrangements for all expansions, acquisitions, sales, new facilities, mergers within the five boroughs of New York City, Nassau, Suffolk, and Westchester counties.

3. To the extent permitted by law, whenever an Employer hereafter shall enter into an affiliation agreement with the City of New York, the Employer shall extend recognition to the Union hereunder for the Employees employed by the Employer under such affiliation and this contract shall apply to such Employees.

4. Whenever the word "Employee" is used in this Agreement, it shall be deemed to mean the Employees in the bargaining unit(s) covered by this Agreement, as defined in Article I, Section 1 hereof.

5. At the time a new Employee subject to this Agreement is hired, the Employer shall deliver to said Employee a written notice that the Employer recognizes and is in contractual relations with the Union and quoting or paraphrasing the provisions of Articles II and III of this Agreement.

6. **Part-time Employees:** Part-time Employees covered by this

Agreement shall receive fringe benefits, wage rates and wage increases hereunder on a pro rata basis.

7. The Employer shall prorate paid benefits (i.e., paid: vacations, holidays, sick leave, free days, leave for death in the family and paternity leave) based on the average number of hours actually worked per week in a six (6) month period. Computations shall be made every six (6) months. Part-time Employees shall not accrue benefits which are greater than those accrued by a full-time Employee in the same job who is regularly scheduled to work the normal full-time work week.

8. Although certain part-time and temporary employees are excluded from coverage hereunder, nevertheless, the Employer will employ them at not less than the wages and minimums specified in this Agreement. It is recognized, however, that such employees are not and shall not be in any way considered covered by any of the provisions of this Agreement.

9. Attachment A hereto shall apply with respect to residual units.

## ARTICLE II
## Union Security

1. All Employees on the active payroll as of June 1, 2004, who are members of the Union shall maintain their membership in the Union in good standing as a condition of continued employment.

2. All Employees on the active payroll as of June 1, 2004 who are not members of the Union shall become members of the Union within thirty (30) days after the effective date of this Agreement, except those who were required to become members sooner under the expired Agreement who shall become members on the earlier applicable date, and shall thereafter maintain their membership in the Union in good standing as a condition of continued employment.

3. All Employees hired after June 1, 2004, shall become members of the Union no later than the thirtieth (30th) day following the beginning of such employment and shall thereafter maintain their membership in the Union in good standing as a condition of continued employment.

4. For the purposes of this Article, an Employee shall be considered a member of the Union in good standing if he/she tenders his/her periodic dues and initiation fee uniformly required as a condition of membership.

5. Subject to Article XXXI, an Employee who has failed to maintain membership in good standing as required by this Article shall, within twenty (20) calendar days following receipt of a written demand from the Union requesting his/her discharge, be dis-

charged if, during such period, the required dues and initiation fee have not been tendered.

6. The Union agrees that it will indemnify and hold the Employer harmless from any recovery of damages sustained by reason of any action taken under this Article.

## ARTICLE III
### Check-Off

1. Upon receipt of a written authorization from Employee in the form annexed hereto as Exhibit A, or in any other form designated by the Union necessary to accommodate any changes in the 1199 dues or initiation fee structure, the Employer shall, pursuant to such authorization, deduct regular dues and/or initiation fees as established from time to time by the Union from the wages due said Employee. Such deduction shall start no later than the first pay period following the completion of the Employee's first thirty (30) days of employment.

The Employer shall remit to the Union all deductions for dues and/or initiation fees made from the wages of all Employees on or before the fifteenth (15th) day of the month following the month in which the paycheck was dated from which those dues and initiation fees were deducted.

This remittance shall be accompanied by a list of all Employees on whose behalf dues and initiation fees are being paid. Such list shall include, for each Employee, the following information: Institution, Employee's name, social security number, job classification, amount of dues remitted, amount of initiation fees remitted, hours worked, gross pay, and total pay subject to dues deduction.

2. At the written request of the Union made in accordance with the provisions of this paragraph 2, the Employer shall deduct from the wages due an affected Employee an amount stated by the Union to be unpaid dues and/or initiation fees. Such a written request for unpaid dues shall be made by the Union no more frequently than twice a year on January 1 and/or July 1. The request shall include the name, social security number, amount of dues and/or amount of initiation fees to be deducted from the Employee's wages, and the number of installments by which the total shall be deducted.

With the written request, the Union shall send the Employer a copy of a letter that has been sent to each listed Employee advising them of the Union's dues and initiation fee policies, the amount of dues or initiation fees owed by the members, an explanation of the computation, and the procedure by which such unpaid dues and/or initiation fees shall be deducted by the Employer. The letter

shall advise the Employee to direct any question on this deduction to the Union. The Employer shall provide the Union with the name, title, and telephone number of the person to which Requests pursuant to this paragraph shall be submitted.

The Employer shall make the first deduction pursuant to the request no more than thirty (30) days after receipt of the Request, and shall remit the deductions on the same schedule as set forth in paragraph 1 above.

The Employer shall provide to the Union a separate list of all Employees on whose behalf payments pursuant to this paragraph 2 are being made. Said list shall include name, social security number, and amount of dues and/or amount of initiation fees remitted.

The limitation of submission of Requests on January 1 and July 1 shall not apply when an Employee is a new hire from whom deduction of dues and/or initiation fees were not initiated timely. In such cases, deduction of dues and/or initiation fees by the Employer shall commence immediately on the Employer receiving written authorization.

The Employer shall not be required to attempt to recover unpaid dues or initiation fees from Employees who have terminated employment and received their last wages prior to the receipt of the Request.

3. Employees who do not sign written authorizations for deductions must adhere to the same payment procedure by making payments directly to the Union.

4. **The 1199SEIU Federal Credit Union:** Upon receipt of a written authorization from an Employee in the form annexed hereto as Exhibit B, the Employer shall, pursuant to such authorization, deduct from the wages due said Employee each pay period, starting not earlier than the first period following the completion of the Employee's first thirty (30) days of employment, the sum specified in said authorization and remit same to the 1199SEIU Federal Credit Union, or successor credit union, bank or other financial institution ("the Credit Union") to the credit or account of said Employee. If the Employer's payroll system permits, such deductions shall be remitted to the Credit Union on each pay date via ACH or similar electronic funds transfer system, directly to the account of the Credit Union as designated by the Credit Union as to account number and place, for the benefit of each participant, with funds available in "US Funds" on the scheduled payroll date. Such transmittal shall contain for each participant, the name, social security number prefixed with a "0" (making a 10-digit number), description, Institution name, and Institution's Credit Union ID.

If an ACH transfer is not possible under the Employer's payroll

system, the Employer shall wire the funds to the Credit Union on each paydate to the account of the Credit Union as designated by the Credit Union as to account number and place, and shall at the same time e-mail to the Credit Union a file containing the same information as listed above, written in a common spreadsheet program or ASCII, together with the total of the funds that have been transmitted.

5. Upon receipt of a written authorization from an Employee in the form annexed hereto as Exhibit C, or in any other form designated by the Union and necessary to accommodate political action deductions, the Employer shall, pursuant to such authorization, deduct from the wages due said Employee once a month the sum specified in said authorization and remit the funds to the 1199/SEIU Political Action Fund, in the same manner and at the same time as the Employer shall remit dues and initiation fees as described above. This remittance shall be accompanied by a list of all Employees on whose behalf deductions are being submitted. Such list shall include, for each Employee, the following information: Institution, Employee's name, social security number and amount remitted.

6. The Employer shall be relieved from making such "check-off" deductions upon (a) termination of employment, or (b) transfer to a job other than one covered by the bargaining unit, or (c) lay-off from work, or (d) an agreed leave of absence, or (e) revocation of the check-off authorization in accordance with its terms or with applicable law. Notwithstanding the foregoing, upon the return of an Employee to work from any of the foregoing enumerated absences in section (b) - (d), the Employer will immediately resume the obligation of making said deductions, except that deductions for terminated Employees shall be governed by Paragraph 1 hereof. This provision, however, shall not relieve any Employee of the obligation to make the required dues and initiation fee payment pursuant to the Union constitution in order to remain a member in good standing of the Union.

7. The Employer shall not be obliged to make deductions of any kind from any Employee who, during any dues month involved, shall have failed to receive sufficient wages to equal the dues deductions.

8. The Employer agrees to furnish the Union each month within fifteen (15) days after the end of the month a listing in order of social security numbers of the names of all bargaining unit Employees paid at any time in the prior month, their addresses, social security numbers, classifications of work, their date of hire, and if terminated during the month, their date of termination; and names of bargaining unit Employees on leave of absence together

with their beginning dates of leave of absence and type of leave.

9. Upon receipt of a written authorization from an Employee in the form approved by the 1199 Pension Fund Trustees the Employer shall, pursuant to such authorization, deduct from the wages due said Employee once a month the sum specified in said authorization and remit same to the 1199 Pension Fund as the monthly repayment of the Employee's loan obtained from such Fund on or before the fifteenth (15th) day of the month following the month in which the paycheck was dated from which the deduction was made. It is specifically agreed that the Employer assumes no obligation, financial or otherwise, as a result of compliance with this provision.

10. It is specifically agreed that the Employer assumes no obligation, financial or otherwise, arising out of compliance with the provisions of this Article, and the Union hereby agrees that it will indemnify and hold the Employer harmless from any claims, actions or proceedings by any Employee arising from deductions made by the Employer hereunder. The Union further indemnifies and holds the Employer harmless from any claims, actions or proceeding by any government agency or by any groups so long as such groups are not funded directly or indirectly by the Employer for the 1199/SEIU Political Action Fund. Once funds are remitted to the Union, their disposition thereafter shall be the sole and exclusive obligation and responsibility of the Union.

11. Any list required hereunder that contains in excess of twenty-five (25) names shall be transmitted to the Union or the Credit Union in electronic form in the format agreed to between the League and the Union. The Employer shall provide to the Union and the Credit Union the name, title, e-mail address, and telephone number of one person responsible for each separate dues/initiation fees remittance list to be submitted pursuant to this paragraph who can directly authorize and produce such electronic transmission.

12. The Union may process arbitration claims under this Article III before the Funds Arbitrator designated in Article XXV paragraph 5, and pursuant to the procedures set forth in that section. No other sections of that Article shall apply.

## ARTICLE IV
### No Discrimination

1. Neither the Employer nor the Union shall discriminate against or in favor of any Employee on account of race, color, creed, national origin, political belief, sex, sexual orientation, citizenship status, marital status, disability or age.

2. No Sexual Harassment:

(a) The Employer will instruct its supervisory and managerial staff that sexual harassment will not be permitted or tolerated.

(b) Management and supervisory staff will receive regular periodic updates on sexual harassment policy, standards of acceptable (and unacceptable) behavior and consequences for violations of policy.

3. The Employer after notification to the Union shall be permitted to take all actions legally required to comply with the Americans with Disabilities Act.

## ARTICLE V
## Union Activity, Visitation and Bulletin Boards

1. No Employee shall engage in any Union activity, including the distribution of literature, which could interfere with the performance of work during his/her working time or in working areas of the Employer at any time, except as provided in Article XXXI Grievance Procedure.

2. A representative of the Union shall have reasonable access to the Employer for the purpose of conferring with the Employer, delegates of the Union and/or Employees, and for the purpose of administering this Agreement. Where the Union representative finds it necessary to enter a department of the Employer for this purpose, he/she shall first advise the personnel office or the head of the department or his/her designee in person, as the Employer shall state. A delegate intending to go to a department other than the one he/she represents shall follow the above procedure. Such visits shall not interfere with the operation of the Employer.

3. The Employer shall provide Bulletin Board(s) which shall be used for the purpose of posting proper Union notices. Such Bulletin Board(s) shall be placed conspicuously and at places readily accessible to workers in the course of employment.

4. The work schedules of Employees elected as Union Delegates shall be adjusted to permit attendance at regular delegate assembly meetings providing Employer operations shall not be impaired.

5. Each October, the Union will provide a listing of its representatives at member institutions, including delegates, to the Employer. In the event the Union changes its representatives at member institutions, the Union promptly shall notify in writing the Employer of such change.

6. Employees elected or appointed as Trustees of the NBF, PF, TUF, JSF, P&P and Child Care Fund shall be released by the Employer without pay to attend scheduled meetings of the Trustees. The Employer will also make its best effort to release

employees elected or appointed to the Executive Council to attend scheduled meetings thereof. In both cases, the Employees shall be released unless such release will unreasonably interfere with the operation of the unit in which the Employee is employed.

7. As part of cost savings referred to in this Agreement, the parties recognize that the Union's delegates will play a pivotal role in educating the Union membership in understanding the cost savings programs, in helping to prevent fraud and abuse in the Funds, and in understanding the Agreement and collective bargaining process. In this regard, the Delegates will be released for up to five (5) days over the life of this Agreement with pay for intensive training in these areas. The Employers will be reimbursed for the cost of release time (approximately $1,000 per delegate) by a reduction of their Pension Fund contributions, as agreed to by the President of the League and the President of the Union. Unless otherwise agreed to by the parties, this provision shall expire on April 30, 2008.

## ARTICLE VI
### Joint Employment Service

1. The Joint Employment Service ("Service") will be the sole source of referrals for all 1199 bargaining unit jobs for a seven (7) day period. This service will include referrals of agency and per diem workers. A priority consideration for employment will be given to qualified referrals. In emergency situations or cases where qualified agency or per diem workers are not available, the Employer may hire without going through the Service. Disputes will be subject to review by the Contract Interpretation and Policy Committee, as set forth in Art. XXXIB.

The "Service" shall maintain a computerized bank of prospective employees from all sources, and shall maintain a validation process by which employees' prior work performance, licensure and certification are verified.

2. Neither the Service in referring, nor the Employer in hiring, shall discriminate against an applicant because of membership or non-membership in the Union or any ground prohibited under Article IV (No Discrimination ) of this Agreement.

3. (a) The Employer shall notify the Service of all bargaining unit job and training position vacancies,* including temporary and part-time vacancies and positions for which its laid off Employees may be eligible for recall, and shall afford the Service seven (7) days

---

*Where the Employer has an affiliated school or University program and where students do their practical work at the Employer, the Employer may offer vacant positions to said students at its discretion without referring to the Joint Employment Service, notwithstanding paragraph 7, below.

from the time of notification (exclusive of Saturdays and Sundays) to refer applicants for the vacancy before the Employer hires from any other sources. In referring applicants, after persons on layoff from the Employer have been recalled, the Service shall give preference to persons on layoff from other members of the League, persons with prior experience in the health care industry, and persons living in the community the Employer serves, and must meet the qualifications required by the individual Employer for a particular job vacancy.

(b) Notwithstanding the foregoing, the Employer, after giving notice to the Service, may fill vacancies if it must fill the position without delay to meet an emergency or to safeguard the health, safety and well being of patients, provided that such vacancy may not be filled on a permanent basis.

4. Notwithstanding the foregoing, the Employer retains the right to hire such applicants referred by the Service as it deems qualified, in its sole discretion, and the right to hire applicants from other sources in the event the Service does not refer qualified applicants within seven (7) days, except that the Employer shall not, without giving a reason, reject an applicant (other than an Employee on layoff from the Employer) sent by the Service where the Service sends a minimum of three (3) applicants who have the minimum qualifications for the job and have at least three (3) years recent experience in the same or similar job with a League member.

5. Any applicant hired into a permanent job shall have a Certificate issued by the Service. All applicants referred to the Service by the Employer shall be issued a Certificate.

6. The Employer agrees to notify and utilize the Service in accordance with the procedure set forth above (in this Article VI) for all short-term positions, including temporary positions, agency referrals, and positions for one-fifth (1/5) of the work week or less, once the Service initiates such referral program. In hiring short-term workers for one-fifth (1/5) or less of the work week the Employer may use other sources.

7. The hiring rights and obligations set forth in this Article VI shall not interfere with the mandatory match requirements of Article IXA, Section B (6)(c)(i) (Job Security Fund).

**ARTICLE VII**
**Probationary Employees**

1. Newly hired Employees shall be considered probationary for a period of ninety (90) days from the date of employment, excluding time lost for sickness and other leaves of absence.

COLLECTIVE BARGAINING AGREEMENT                17

2. Where a new Employee being trained for a job spends less than twenty-five percent (25%) of his/her time on the job, only such time on the job shall be counted as employment for purposes of computing the probationary period.

3. The probationary period for a part-time Employee whose regularly scheduled work week is less than three-fifths (3/5) of the regular work week applicable to his/her job classification shall be four (4) consecutive months.

4. Notwithstanding the foregoing, the probationary period for social workers including part-time social workers, according to custom shall be six (6) months.

5. During or at the end of the probationary period, the Employer may discharge any such Employee at will and such discharge shall not be subject to the grievance and arbitration provisions of this Agreement.

### ARTICLE VIII
### Temporary Employees

1. A temporary Employee is one who is hired for a period of up to three (3) months and is so informed at the time of hire, and who is hired for a special project, to replace an Employee on leave or vacation, to fill a vacant position (a position for which the Employer is actively recruiting for which no Employee at the institution has exercised rights under Article IX (Seniority) and after the position has been submitted to the Job Security Fund layoff pool ("JSF pool") operated by the Joint Employment Service), to fill an emergency vacancy of up to five (5) business days or less due to bereavement leave, illness or emergency family care. The said three (3) month period may be extended by the Employer at its option up to an additional three (3) months or for the length of the leave of the Employee being replaced, whichever is greater. Such Employee shall become a member of the Union after the expiration of the initial three (3) month period.

2. Temporary Employees will receive holiday pay in the same manner as regular Employees.

3. After three (3) months, temporary Employees will begin to accrue vacation and sick leave beginning with the first day of the fourth month of employment. If, however, temporary Employees are retained beyond six (6) months in continuous employment, the accrual of vacation and sick leave will be from the first day of employment.

4. Contributions to the 1199SEIU National Benefit Fund for Health and Human Service Employees on behalf of temporary Employees shall commence after three (3) months of employment

and shall cover the payroll periods beginning with the first day of the fourth month.

5. Contributions to the 1199/SEIU Health Care Employees Pension Fund and the Hospital League/1199 Training and Upgrading Fund will not be made on behalf of temporary Employees unless and until they begin permanent employment, in which case such contributions shall commence for the payroll period in which they are made permanent.

6. A temporary Employee who has been employed three (3) months or longer shall be treated as a regular Employee for the purpose of filling vacant or available permanent positions for which the Employee is immediately qualified. A temporary Employee who is retained as a temporary Employee after the initial three (3) month period shall be entitled, when replaced by the returning Employee, to bump an Employee in his/her classification with less bargaining unit seniority, subject, however, to subsection 7(b) of Article IX (Seniority).

7. Prior to hiring temporary Employees to fill temporary positions, the Employer shall:

    a.  Offer the position to Employees with layoff/recall rights;

    b.  Offer the position to individuals in the JSF pool;*

    c.  Offer additional hours to incumbent part-time Employees in the classifications by seniority, provided they commit to covering the entire assignment for the duration of the opening. Said part-timers shall have the right to return to their former positions at the end of the temporary position;

    d.  Utilize the Joint Employment Service; or

    e.  Utilize the Joint Employment Service's short-term referral program (Article VI, paragraph 6, above), if established, which shall provide staff for short-term need at competitive rates;

    f.  Offer overtime to incumbent Employees if practicable.

8. An agency worker may be used to fill a temporary position as defined herein if the Employer is unable to fill the temporary position from the sources listed above.

## ARTICLE VIIIA
### Vacancies and Emergency Vacancies

1. The Employer shall fill vacant positions (positions for which the Employer is actively recruiting for which no Employee at the

---

*Mandatory Match obligation applies only if the temporary position is of three (3) months duration or longer (see Art.IXA(B)(6)(c)(v)). The Employer need only refer a particular temporary job to the Joint Employment Service once.

institution has exercised rights under Article IX and after the position has been submitted to the JSF pool and the Joint Employment Service) in the following order:

  a. Offer the extra hours to incumbent part-timers by seniority who will commit to covering the entire assignment for the duration of the opening;

  b. Offer overtime where practicable;

  c. Use agency workers under the following conditions:

   (i) for up to two (2) months. If the period extends for more than two (2) months the agency worker shall become a member of the bargaining unit;

   (ii) there shall be no extensions of this time period;

   (iii) use of agency workers shall be permissible for only one two (2) month period for each specific vacancy as defined in 1 above;

   (iv) if an agency employee is used to temporarily fill a vacant position beyond the aforementioned time period, the Employer shall either place such employee on its payroll or employ another person. The employee will be covered by the collective bargaining agreement effective on the first day after the two (2) month time period expires.

2. In the event of an emergency vacancy of up to five (5) business days or less due to bereavement leave, illness or emergency family care, the Employer shall have the right to use agency Employees if the position cannot practicably be filled by a part-time Employee or by use of overtime.

3. At the end of said two (2) month period for filling vacancies, or five (5) days for emergency leave or three (3) months filling a temporary position as set forth in Art. VIII (paragraphs 7 and 8), agency workers shall be removed from agency payroll and placed on the hospital payroll as bargaining unit members. Subject to this paragraph 3, agency workers hired to fill vacancies, vacations, special projects, emergency leaves or temporary positions are not in the bargaining unit.

4. If areas of frequent utilization of agency Employees are determined, the Employer and the Union shall undertake training initiatives to fill vacancies by use of in-house staff. Such initiatives shall include jointly notifying the Training Fund to undertake training programs for said shortage areas, including training workers in multi-skills and for particular classifications. The institution agrees to make space available on-site or assist in locating space in the area of the institution.

## ARTICLE IX
### Seniority

**1. Definition.**

(a) Bargaining unit seniority is defined as the length of time an Employee has been continuously employed in any capacity in the Employer.

(b) Classification seniority shall be defined as the length of time an Employee has worked continuously in a specific job classification within a Department.

**2. Accrual.**

(a) An Employee's seniority shall commence after the completion of his/her probationary period and shall be retroactive to the date of his/her last hire.

(b) Bargaining unit seniority shall accrue during a continuous authorized leave of absence without pay up to twenty-four (24) months, or for the period of maternity leave provided that the Employee returns to work immediately following the expiration of such leave of absence; during an authorized leave of absence with pay; during a period of continuous layoff not to exceed the lesser of (i) twelve (12) months (or the period of receipt of JSF benefits if longer than twelve (12) months) or (ii) the length of an Employee's continuous employment, if the Employee is recalled into employment or placed by the JSF; and during a sick leave of up to twenty-four (24) months.

(c) Classification seniority shall accrue during the periods specified in (b) above and during the time an Employee works in a specific job classification.

(d) Temporary Employees, as defined in Article VIII, shall have no seniority during the first three (3) months they occupy the status of temporary Employees, but if employed longer than three (3) months or should any temporary Employee become a permanent Employee, then his/her seniority shall be retroactive to the date of employment, except as otherwise provided in Section 4(c) hereof.

(e) Part-time Employees who are regularly scheduled to work three-fifths (3/5) or more of the regular work week applicable to their job classification shall accrue seniority as set forth in (a), (b) and (c) above. Part-time Employees who are regularly scheduled to work less than three-fifths (3/5) of the regular work week applicable to their job classification (except those employed as of June 30, 1974, whose seniority shall be governed by the provisions of the contract expiring June 30, 1974, or such other appropriate expiration date as provided in subsection 2 of Article XLIII) shall accrue seniority in accordance with the following formula:

Length of Service  X   <u>Straight time hours paid</u>
Number of hours constituting the
regular work week

For purposes of computing vacation entitlement, however, all part-time Employees shall accrue seniority as set forth in (a),(b) and (c) above.

3. **Loss of Seniority.**

An Employee's seniority shall be lost when he/she:

(a) Terminates voluntarily.

(b) Is discharged for cause.

(c) Willfully exceeds an official leave of absence.

(d) Is laid off for (i) a period of twelve (12) consecutive months (or the period of JSF benefits if longer than twelve (12) months) or (ii) a period exceeding the length of the Employee's continuous service, whichever is less.

(e) Fails to return to work on a recall from layoff, within a reasonable time after the Employer has sent notice to him/her to return by letter or telegram to the last address furnished to the Employer by the Employee, unless the Employee has a valid reason for inability to respond.

4. **Application.**

(a) Bargaining unit seniority shall apply in the computation and determination of eligibility for all benefits where length of service is a factor pursuant to this Agreement and to layoff, recall, displacement, lateral transfers and promotions.

(b) Classification seniority shall apply for scheduling of vacations as herein provided.

(c) Employees specifically covered by this Agreement as set forth in the stipulations referred to in Article I, Section 1(a), more than fifty percent (50%) of whose pay is charged to a special or non-budgetary fund and who are informed at the time of their hire or at the time of transfer that their employment is for a special non-budgetary or research project and subject to this provision, shall, for the purposes of layoff, be considered to have bargaining unit seniority which may be exercised only within the project or grant to which assigned. Such Employees shall be considered to have bargaining unit seniority for purposes of transfer or recall to a vacant position outside of the special project, provided in each case that the Employer determines that the Employees retained or recalled have the ability to do the work. Such determination by the Employer shall not be arbitrary. Employees, fifty percent (50%) or more of whose pay is charged to an Employer's budget shall be considered as having seniority on that basis and not under a grant. The layoff, employment security, displacement and recall rights of

Employees whose pay is partially or wholly from an externally funded grant or program who had completed twenty-four (24) months of membership in an 1199 bargaining unit at their Employer as of February 1, 1998, are as set forth in Art. IXA(A)(6).

5. **Layoff.**

(a) In the event of a layoff within a job classification or group, probationary Employees within that job classification, or group (where applicable) shall be laid off first without regard to their individual periods of employment. Non-probationary Employees shall be the next to be laid off on the basis of their bargaining unit seniority.

(b) A non-probationary Employee shall not be laid off if, at the time of the prospective layoff, temporary or agency employees are being utilized in the Employee's classification or group (where applicable) and the Employee accepts the same assignments and schedule as the temporary/agency employee(s) in lieu of layoff. At the time of layoff, it shall be the Employee's option to accept such assignment or to exercise rights under the layoff and recall provisions of this Article and under Article IXA (Job Security). If the Employee accepts such assignment, the Employee is not laid off and remains an Employee with recall rights commencing from the date the Employee starts such assignment.

The Employer shall use best efforts to consolidate temporary, agency and less than one-fifth work schedules to create regular positions for Employees who would otherwise be laid off.

Upon request, at the time of layoff, the Employer shall provide to the Union an updated schedule of all temporary and agency employees and one-fifth (1/5) or less Employees in the relevant classification(s).

(c) In the event an Employee is scheduled to be laid off in one Department and there exists a vacant position in another Department which the Employee has the ability to perform, then bargaining unit seniority shall prevail in assigning such Employees scheduled to be laid off to such vacant jobs. This provision is not intended to circumvent paragraph 8 of this Article.

(d) If a part-time Employee has greater full-time equivalent seniority than a full-time Employee in the same classification who is to be laid off, the part-time Employee must be willing to accept full-time employment to continue working.

6. **Recall.**

(a) Whenever a vacancy occurs, Employees who are on layoff in that classification or group (where applicable) shall be recalled in accordance with their bargaining unit seniority. If a vacancy occurs where no Employee in that classification or group (where applicable) has recall rights, then the laid off Employee with the

most bargaining unit seniority will be recalled if he/she has the ability to do the work and if not, the next senior Employee will be recalled, and so on.

(b) Probationary Employees who have been laid off have no recall privileges.

(c) A part-time Employee on layoff shall have recall rights to a full-time position only if he/she is willing to work the required full-time schedule of hours.

7. (a) It is agreed in principle that for the purpose of applying seniority to recalls and to vacant positions and to layoffs, Employees in job classifications of similar types and requiring similar skills shall be grouped together. This provision shall be implemented on an Employer-by-Employer basis.

(b) The Employer shall use its best efforts to place permanent Employees designated to be laid off into vacant positions for which they are qualified if they can fully perform the job.

(c) In the event of a layoff of any Employee, there shall occur only one "bump" in the Employer. The only Employee who may be bumped by the Employee originally scheduled to be laid off shall be the Employee with the least bargaining unit seniority who is in the classification or group (where applicable). An Employee who is "bumped" shall himself/herself have no bumping rights. In the event the Employee originally scheduled to be laid off does not wish to exercise his/her right to "bump" the Employee with the least bargaining unit seniority who is in the classification or group (where applicable), such Employee shall be deemed to be laid off.

8. **Promotions.**

(a) Where a promotional vacancy in a bargaining unit job occurs, the Employer shall post a notice of such vacancy on the bulletin boards it ordinarily uses for notices to bargaining unit Employees for a period of not less than three (3) working days excluding weekends and holidays before the vacancy is filled. Where two (2) or more Employees are under consideration for such vacancy, the Employer shall promote the Employee with the greatest bargaining unit seniority, unless as between or among such Employees there is an appreciable difference in their ability to do the job. Where an emergency exists, the Employer may dispense with the posting requirement. Disputes under this provision shall be subject to the grievance and arbitration provisions of the Agreement.

(b) An Employee who is promoted shall, upon promotion, receive an increase equal to the difference between his/her prior rate and the minimum rate for the job into which he/she is promoted or ten dollars ($10.00) per week, whichever is greater (prorated in the case of part-time Employees).

(c) An Employee who is promoted shall serve the same pro-

bationary period on the new job as a new hire. If he/she is removed from the new job during the probationary period, he/she shall be returned to his/her former job, if vacant, or to another suitable job (vacant or one that will be newly created) on the same shift as the former job without loss of seniority, pay or other benefits applicable to the former job, excepting that if he/she is discharged, his/her rights shall be subject to Article XXIX (Discharge and Penalties) of this Agreement.

(d) A bargaining unit job vacancy shall, as to any Employee under consideration for such vacancy, be deemed a promotion if the difference in minimum rates between the job occupied by the Employee and the job in which a vacancy exists is at least five dollars ($5.00) per week, or if the vacancy exists within a job classification (for example, a Staff to Senior title, "A" to "B", "I" to "II"). If the new job in which the Employee is placed is considered a promotion under the foregoing provisions, he or she shall receive the guaranteed increase as set forth above in paragraph 8(b). If the new job in which the Employee is placed is not considered a promotion under the foregoing, the Employee shall receive either his or her present salary or the minimum rate for the new job, whichever is higher.

9. **Lateral Transfer.**

(a) Where a vacancy occurs in a bargaining unit job (other than a promotional vacancy), any Employee with a satisfactory work record and with at least one (1) year of service in his/her present job may request, in writing, a transfer to fill such a vacancy provided that the Employee has the necessary qualifications to perform the job and provided further that such transfer will not unreasonably reduce the operational efficiency of any department. Where two (2) or more Employees request such transfer in writing, the Employer shall transfer the Employee with the greatest bargaining unit seniority, unless as among such Employees there is an appreciable difference in their ability to do the job.

(b) An Employee who is laterally transferred shall serve the same probationary period on the new job as a new hire. If he/she is removed from the new job during the probationary period, he/she shall be returned to his/her former job, if vacant, or to another suitable job (vacant or one that will be newly created) on the same shift as the former job without loss of seniority, pay or other benefits applicable to the former job, excepting that if he/she is discharged, his/her rights shall be subject to Article XXIX (Discharge and Penalties) of this Agreement. Additionally, during said probationary period an Employee shall be returned to his/her former job upon his/her request, in which event the provisions of the preceding sentence shall apply.

## ARTICLE IXA
### Employment Security and Job Security Fund

**A. Employment Security-Protected Status**

1.  Effective April 1, 2002, all regular full-time and part-time Employees who as of February 1, 1998 completed twenty-four (24) months of membership in an 1199 bargaining unit at their Employer, shall not be laid-off during the term of this Agreement. Effective May 1, 2005, all regular full-time and part-time Employees who as of January 1, 2002 completed twenty-four (24) months of membership in an 1199 bargaining unit at their Employer, shall not be laid off during the term of this Agreement. In the event an Employer raises a substantial issue over the number of its protected bargaining unit employees (e.g., more than 75% of the employees in a department or area are protected) the issue may be referred to the Contract Interpretation and Policy Committee ("CIPC"), but shall not be subject to its arbitration process. This provision shall not apply in the event that an institution is closed. If an externally funded grant or program or an HHC affiliation is discontinued, or if its funding is reduced, the provisions of Section 6 or Section 7 below will apply.

2.  Periods of (a) part-time status, (b) paid or unpaid LOA(s), (c) employment in an externally funded grant or program, and/or (d) non-bargaining unit status during an Employee's twenty-four (24) month period of membership in an 1199 bargaining unit at his/her Employer, does not disqualify such Employee from protected status, provided the Employee otherwise qualified under section 1 above, except that an Employee on an unpaid LOA on February 1, 1998 must have returned to work at the end of the LOA and worked for a period of ninety (90) days following such return. Effective May 1, 2005, the February 1, 1998 date in the preceding sentence shall become January 1, 2002.

3.  In the event the Employer transfers an Employee covered by the employment guarantee to a lower rated position or reduces his/her hours, the Employee's base weekly salary will not be reduced during the term of this Agreement. As applied to part-time Employees, this salary guarantee means that the Employee's annual actual hours, excluding overtime, shall not be reduced below such hours for the twelve (12) month period ending December 31, 2003 nor shall the Employee's current hourly rate, as modified by Article X, sections 1(a) and (b) (Wage Increases) be reduced.

4.  In the event that an institution is faced with a severe economic downturn placing that institution in jeopardy of closing and requiring the reduction of its staff, the issue of appropriateness

and number of lay-offs will be determined by the CIPC named in Article XXXIB of this Agreement in accordance with all of the procedures set forth therein. In such event, the laid off Employees shall be covered by all of the provisions of the Job Security Fund.

5.  The institution shall continue to have the right to train or retrain its Employees, including those covered by paragraph 1 above.

6.  Externally Funded Grants or Programs

(a) Employees who otherwise meet the criteria for protected status whose pay is less than one hundred percent (100%) externally funded by a grant or program have full protected status under this Article IXA(A).

(b) Employees who otherwise meet the criteria for protected status and whose pay is one hundred percent (100%) externally funded by a grant or program, may be laid off with recall rights of up to two (2) years (or the length of JSF eligibility whichever is greater) in the event of a partial or full loss of funding from the grant or program. The savings to the grant or program from such layoffs shall not exceed the loss in external funding.

(i)  If there is an available vacant position* outside the grant or program in the Employee's classification or group (where applicable), the Employee must accept that position or be laid off. If there is no such position, the Employee may bump the Employee with the least bargaining unit seniority in the Employee's classification or group (where applicable), excluding Employees working under any other externally funded grants or programs.

(ii)  The Employee will maintain his/her salary if placed in the same job classification or group (where applicable). Where the Employee chooses to accept or bumps into a lower job classification his/her salary will be reduced by the difference between the two minimum rates. The Employee will retain his/her seniority and accrued time off benefits.

(c) The notice provision of Article IX (Seniority) (4)(c) shall not apply to Employees hired prior to July 1, 1998. Notice will be provided to those hired or transferred on or after July 1, 1998 in accordance with Article IX(4)(c).

7.  HHC Affiliations

(a) When an HHC Affiliation contract is terminated or its funding reduced, HHC Affiliation Employees who otherwise meet the criteria for protected status may be laid off subject to the following rights (including the JSF extension of benefits):

---

*The phrase "available vacant position" in the externally funded grants or programs provision includes bargaining unit positions of a merged institution.

(i)   Employee must accept offer of "rollover" if at current salary, or be laid off.

(ii)  If (i) does not apply the Employee shall: (a) be eligible for a bargaining unit vacancy at the parent institution, its HHC affiliations or merged institution (Consolidation of Departments and Mergers Art. IXB) in his/her classification or group (where applicable), provided the Employee is qualified and is able to perform the vacant job according to the standards of the new Employer, (b) maintain his/her salary if placed in the same job classification or group (where applicable); where the new job is in a lower classification his/her salary will be reduced by the difference between the two minimum rates (as in Section 6(b)(ii) above),and (c) retain seniority rights, accrued time off benefits and have recall rights at the above institutions for up to two (2) years in the Employee's classification or group (where applicable).

(b) The savings to the HHC affiliation from such layoffs shall not exceed the loss of funding that precipitated the layoff.

8.   Displacement

(a) Order of Displacement for protected Employees:

(i)   When a job of a protected Employee is eliminated the Employee subject to displacement is the Employee with the least bargaining unit seniority in that classification on that shift within that Department. This provision applies only when the displaced protected Employee can exercise the choices set forth below. (If a displaced Employee is unprotected, his/her rights are governed by Article IX (Seniority).)

(ii)  The displaced protected Employee as defined above has two options:

(1) The right to take a vacant position in his/her classification or group (where applicable) which the Employee is qualified for and can perform.

(2) To bump the least senior Employee in the classification, provided such bumped Employee is qualified for and can perform the vacant position. The bumped Employee must take the vacant position or be laid off.

Nothing herein diminishes the employment protection of a protected Employee, unless he/she refuses a vacant position hereunder.

(b) Incentive for protected Employees displaced into jobs that pay at least fifty dollars ($50.00) below former weekly rate:

(i)   Choice A - one time offer

(1) Super severance package - subject to budget cap/allocation determined by the parties and will be made available to displaced Employees for a limited period of time.

(2) JSF option

(ii)  Choice B - arises when offered or after Employee refuses Choice A.

(1) Retraining (Employee retains salary of the job from which he/she was originally displaced - including increases - and his/her protected status):

A. Employer originated training (if provided) which will result in an upgrade from the job into which the Employee was displaced.

B. Retraining opportunity through the TUF (or JSF) in a program developed by the TUF (or JSF) Trustees which will qualify the Employee within twelve (12) months for a job in which employment is available in the industry, that will be a promotional opportunity for the displaced Employee from his/her present job.  Examples of such programs include but are not limited to:

1.  Tuition Assistance (up to six (6) credits per semester)
2.  Discrete training programs
3.  Scholarships

Pay will be maintained during the retraining program.  If the Employee fails to successfully complete the program in the time allotted, his/her salary guarantee will continue; the Employee will not be retrained for the same position if TUF determines he/she cannot be retrained for that job.  If TUF determines the Employee is capable of retraining and there was no "Misconduct" - poor attendance, failure to complete assignments (or other objective criteria determined by TUF) - he/she must then accept retraining to avoid a reduction in pay.   If TUF determines there was Misconduct, the Employee's pay will be reduced to the job rate of the Employee's current position.  In the event the Employee fails to successfully complete the program a second time, the Employee's pay will be reduced to the job rate of the Employee's current position.

(2) Promotional opportunity from displaced job (however the Employee will not receive a salary increase unless the new job would be a promotion with respect to the job from which the Employee was displaced under Art. IXA(8)).

Refusal of (1) or (2) of Choice B if offered results in layoff.

(c) An unprotected Employee whose job is eliminated shall have layoff rights under Article IX.

## B. League/1199SEIU/Health Care Industry Job Security Fund

1.  The Union and the League agree to continue the 1199 Job

Security Fund program in order to place Employees threatened with layoff in vacancies and retrain those who cannot immediately be placed.

2. In the event that a layoff cannot be avoided, this program is intended to assist the institution in retaining trained Employees within the League regardless of the circumstance of any particular League member. All regular full-time Employees who have completed their probationary period and part-time Employees as set forth below shall be eligible for this program. In no case, however, shall an Employee be entitled to supplemental income for a period longer than his/her length of employment.

3. Part-time Employees who have completed their probationary period will be covered by the Job Security Fund in the event of lay-off, provided the following:

(a) A part-time Employee must be eligible to receive unemployment insurance. All part-time Employees eligible to receive unemployment insurance who are laid off are eligible for Job Security funding provided they have served for a minimum of ninety (90) days and have worked a minimum of seven (7) hours per week (35 hour work week) or seven and one-half hours (37-1/2 hour work week). Laid off part-time Employees who satisfy all the conditions set forth at subsection 6(a) of this Article IXA(B) shall be eligible for Job Security payments until the expiration of this Agreement, or for two (2) years, whichever is greater, but not to exceed the period of the Employee's continuous service.

(b) Any part-timer who is laid off and is not eligible to receive Job Security payments will be entitled to participate in the hiring process.

4. (a) The JSF will be financed by an Employer contribution equal to one-quarter percent (.25%) of gross payroll of the Employees for the preceding month exclusive of amounts earned by the Employees during the first two (2) months following the beginning of their employment.

(b) If the Fund balance reaches a five million dollar ($5 million) level for League institutions the requirement to pay one-quarter percent (.25%) of gross payroll shall be discontinued and shall only be re-instituted if the amount falls below five million dollars ($5 million).*

(c) During the period of this Agreement, if the assets of the JSF fall below one million dollars ($1 million) an amount equal to one (1) month of PF contributions shall be paid to the JSF and

---

*This provision shall be suspended for the duration of this Agreement (June 1, 2004 through April 30, 2008), provided however that in the event the cap is reached, CIPC shall determine whether, and if so where, the 0.25% contribution shall be diverted.

no contribution will be required to be made to the Pension in that month.

(d) The JSF contribution shall be diverted to the TUF as provided in the side letter to this agreement. (See page 112.)

5. The Job Security Program will be implemented in the following manner:

(a) Institutions which, for economic or other reasons, must retrench Employees in any title represented by the Union agree to provide thirty (30) days notice.

(b) Every affected Employee will be immediately referred to the JSF for evaluation and counseling. Any affected Employee shall have the right to a vacant job in the same classification or group (where applicable) in any League institution.

(c) During the notice period, the institution will make every effort to find comparable employment at the institution.

(d) Once the JSF and the Union have been advised of a layoff at any member institution, and the JSF has so advised other League institutions, no member institution may hire into that title without first allowing the JSF to make the job available to Employees subject to layoff. If there is more than one job available in a classification, an Employee may choose where to be placed. If more than one Employee selects a job, Employees shall be placed in seniority order.

(e) Employees who are placed in another member institution shall retain their recall rights and their seniority for the purposes of benefit entitlement.

(f) During the notice period the Employee will be entitled to attend any interviews scheduled by the Placement Service without loss of pay.

(g) If the Employee is not hired during the notice period, he or she will be referred to the JSF for evaluation and placement in an appropriate training program if applicable.

(h) A laid off Employee who complies with the rules and regulations of the JSF, including participation in training as determined by the JSF Trustees, shall (1) be entitled to receive Supplemental Unemployment Benefit (SUB) payments and benefits, and (2) retain industry placement rights as well as recall rights to his/her own institution for the length of time the Employee is eligible for JSF benefits, but not to exceed the period of the Employee's continuous employment. (See paragraph 6(a) below.)

(i) If Employees in the Job Security Fund are required to take an available position on a shift which presents a serious hardship, they may appeal such requirement to the Trustees of the Job Security Fund. An Employee in training through the Job Security Fund, who is required to take a vacant position in the industry,

may seek approval to continue training until such training is completed from the Fund Director, with the approval of the Trustees.

(j)  In no case will the training program be scheduled to last longer than one (1) year except (i) when the Employee has been admitted to a regular Training and Upgrading Fund Technical or Professional Training and Upgrading Program; or (ii) the JSF Executive Director may approve training for up to two (2) years where she/he determines such training is necessary to make the individual re-employable in an appropriate job.

(k)  It is the intent of the Job Security Program to substantially supplement the unemployment income received by a laid off worker who is attending a training program to the maximum extent available from the designated funds as determined under Section 6(a) of this Article.

(l)  In the event a major facility, affiliation contract or grant program closes or terminates, the availability and amount of this stipend benefit shall be determined by CIPC.

(m) No Employee facing layoff or actually unemployed will be required to take a job at an institution farther than the greater of (i) one (1) hour (average NYC travel time) from his/her home; or (ii) his/her average commuting time to the job from which he/she was laid off.

(n) If an Employee refuses to take a job within reasonable travel time of his/her home, he/she shall be removed from the industry-wide pool and be precluded from receiving supplemental unemployment benefits, but shall retain full recall rights to his/her own institution.

(o) An Employee hired under this program will serve a thirty (30) day probationary period.

(p) The severance pay of an Employee laid off under this program who is hired by another institution with no break in service will be paid to the hiring institution.  If such an Employee is laid off within one (1) year and hired by another institution with no break in service, his/her severance pay will be paid to the hiring institution.

(q) The Union and the League will seek the assistance of the New York State Departments of Labor and Health, the New York City Department of Employment and the US Department of Labor to help fund the education and training and re-training components of the Job Security Program.

(r) Other 1199 Employers may join the program if they agree to the above conditions subject to the approval of the League and the Union.

(s) Anything to the contrary herein notwithstanding, for purposes of the mandatory placement provisions of this Article

only, the terms "member institution," "institution," "League institutions" or "Employer" shall include, in addition to Employers participating in the program pursuant to collective bargaining agreements with 1199, any other employer which has entered into a subscription agreement with the P&P Fund agreeing to parallel reciprocal placement rights.

6.  In order to implement the job security provisions set forth in paragraphs 1 through 5 of this Article, the League and the Union have agreed to the following provisions supplementing paragraphs 1 through 5.

(a)    <u>Economic Provisions</u>

Under the Job Security Program, a laid off Employee will be entitled to up to eighty percent (80%) of his/her salary and health coverage for him/herself and his/her family under the NBF under the same conditions that prevail in the present Agreement, as determined by the Contract Interpretation and Policy Committee in accordance with the procedures set forth in Article XXXI(B), provided that the maximum period of time for which any covered Employee may receive JSF payments and benefits shall be until the expiration of the Agreement, or two (2) years, whichever is greater, but not to exceed the period of the Employee's continuous service, unless he/she fails to pursue JSF referrals, refuses to enroll in JSF recommended training, or turns down appropriate job offers, at which time the Executive Director may terminate benefits.  The League and Union hereby direct the Administrator to promulgate appropriate rules to ensure full compliance with JSF regulations.

(i) The amount of the SUB under this Article IXA(B) will be determined in accordance with the following schedules, unless modified by the Trustees of the JSF.

(1) <u>Full-Time Employees</u>

| Average weekly pay | Weekly Amount of SUB (While NYS Unemployment Ins. payments are being received) | Weekly Amount of SUB (After NYS Unemployment Ins. payments cease) |
|---|---|---|
| less than $600 | $100 | $325 |
| $600 but less $750 | $125 | $350 |
| $750 or more | $150 | $375 |

(2) <u>Part-Time Employees</u>

FIRST: Determine  the  full-time  SUB  benefit  for  the

## COLLECTIVE BARGAINING AGREEMENT    33

Employee's position using the chart in subparagraph (1) above.

SECOND:    Multiply the applicable full-time SUB payment by this ratio:

$$\frac{\text{Average weekly pay}}{\substack{\text{Full-time minimum weekly} \\ \text{rate for Employee's position}}}$$

(3) The SUB for a part-time Employee shall not exceed the SUB payable to a full-time Employee laid off from the same position. If the average weekly earnings of a part-time Employee exceed the full-time minimum weekly rate for his/her position, he/she shall receive SUB benefits calculated under subparagraph (1) above.

(4) SUB payments shall commence when monies from unemployment insurance, severance and accrued leave benefits (e.g., vacations, holidays, accrued sick leave where provided by past practice, etc.) cease to replace one hundred percent (100%) of the affected Employee's pre-layoff weekly salary on an after-tax (adjusted for FICA) basis.

(5) For the purposes of this paragraph 6(a) only, average weekly pay shall mean the Employee's gross pay averaged over the prior fifty-two (52) weeks or period of his/her employment if less than fifty-two (52) weeks.

(ii)  National Benefit Fund Coverage

Coverage under the National Benefit Fund (NBF) will be provided by the JSF for up to the duration of the Agreement or up to two (2) years whichever is longer, pursuant to this paragraph 6(a) of Article IXA(B). JSF payment for NBF coverage will commence when NBF coverage would otherwise cease due to layoff so that there is no break in coverage for the Employee and dependents. The JSF shall pay the NBF at the current Employer contribution percentage based on the individual's average weekly pay at the time he/she was laid off.

(b)  Administration of Job Security Fund

(i)  The Trustees of the JSF, in addition to the monies received from Employers, shall attempt to secure such additional funds as may be available from public or other private sources. In addition, the Trustees shall seek community cooperation in such programs.

(ii)  The JSF shall set up a completely separate job security program for other employers who agree to contribute to the JSF, provided there is a total and complete legal segregation of

funds and entitlement to monetary and other job security benefits to be provided or administered by the JSF.

(iii) The League shall be entitled to designate nine (9) JSF trustees, two (2) of whom will be from Employers who are not members of the League but are in the League Pool of the JSF and one of whom shall be from the Archdiocese. Other employers who are not in the League Pool will have the right to elect up to two (2) trustees with authority limited to dealing with the benefits to be provided to Employees of such other employers. The Union shall be entitled to designate nine (9) trustees to correspond to the nine (9) designated by the League, and two (2) trustees to correspond to the two (2) designated by other employers.

(c) <u>Other Provisions</u>

(i) **Job Classification, Minimums, Grouping and Right to Vacant Positions**

(1) In accordance with the provisions below, there shall be mandatory hiring if an Employee is in the same classification or group, subject only to probationary period for evaluating performance (see subparagraph (vi), below) and providing on-the-job training as necessary.

The right of an affected Employee to a vacant job in the same classification or group in any League institution under subsection (5)(b) of Article IXA(B) means the right to a vacant job in either the same job classification if it exists at the other League institution, or group where applicable, under subparagraphs (2) or (3) below. Employees shall be accorded the same orientation provided to new hires in that classification. Job classification includes job title and job description which, in turn, includes duties and minimum qualifications and requirements.

An Employee must meet the minimum qualifications and requirements of the vacant job which the new Employer applies to promotions and new hires, except the requirement of a high school diploma or its equivalency for Entry Level Jobs. Entry-Level Jobs means job classifications with full-time minimum weekly rates of pay no greater than five dollars ($5) above the lowest full-time minimum weekly rate under this Agreement. Also, Employees shall be accorded the same orientation provided to new hires in that classification.

(2) The following two (2) League-wide job classification groupings shall apply to all Employers for Job Security Fund purposes.

• All entry level non-skilled jobs: Uniform service/maintenance; including but not limited to the following: Housekeeping, waxer and stripper, dietary worker, dietary clerk, potwasher, cook's helper, central supply atten-

dant, soiled laundry handler, laundry worker, mailroom clerk, groundskeeper, presser, washer, painter's helper, carpenter's helper, trades' helper.

• Uniform clerical entry jobs and clerical jobs whose minimum rate is twenty dollars ($20) or less above the entry level minimum; i.e., clerk, clerk typist, mail room clerk, admitting clerk, receptionist, ward clerk, accounting clerk, etc., except those requiring specialized skills.

The League and the Union agree to meet to prepare appropriate modifications to the above lists.

(3)  In addition, an affected Employee shall also have the right to a vacant job which, by past practice, an Employer has previously grouped with the Employee's job classification for such Employer's purposes of layoff and recall, except where such other job classification has since been materially modified in a way that renders the prior grouping inappropriate. These groupings shall be memorialized in writing on a hospital-by-hospital basis by March 31, 2000.

(4)  An Employer may not hire into a vacancy in the same job classification or grouped job classification (where applicable) without first allowing the JSF to make the job available to Employees subject to layoff. The Employer shall be deemed to have made the job available to the Employees subject to layoff if after notification from the JSF it affords the JSF seven (7) working days from the time it notifies the JSF of a vacancy to refer applicants before it hires from other sources. With respect to any given job vacancy, there shall be only one seven (7) working day period during which the Employer may not hire from other sources. However, Employees in the same job classification who become subject to layoff shall have the right to such vacant job during the seven (7) working days immediately following the foregoing seven (7) working day period unless the Employer has made a commitment to hire another individual for such vacancy before the Employee is referred to the Employer by the JSF.

The parties shall designate an arbitrator to resolve disputes, on an expedited basis, grieving alleged violations of the "mandatory match" provisions of subsection 6(c) of Article IXA(B). A hearing before the arbitrator shall be held within fifteen (15) calendar days after the Union submits the matter to arbitration, and an award shall be rendered in forty-eight (48) hours.

The Job Security Fund will have full access to all relevant information and cooperation from the Human Resources Departments and 1199 chapter job committees for maximum placement of laid off Employees.

### (ii)  Bumping or Transfer to Vacant Position

An Employee who refuses a vacancy or refuses or fails to exercise his/her bumping rights, shall not be covered by the JSF provisions of this Article IXA(B) provided, however, such coverage shall apply to Employees who fail to bump or accept a vacancy within their bargaining unit* if the minimum rate for the new job is more than seven and one-half percent (7.5%) less than the minimum rate for their current job and to full-time Employees who decline to bump into or to accept a part-time position.  This paragraph is without prejudice to and shall not be used in any proceeding interpreting any issues concerning rights and duties under the layoff and recall provisions of this Agreement (e.g. issues such as whether the Employee must accept a vacancy to avoid layoff).

### (iii)  30 Day Notice of Layoff

The thirty (30) day notice of layoff provided in paragraph 5(a) of this Article IXA(B) means that the Employer must meet the following notice requirements before effectuating a layoff pursuant to the Job Security Program.

(1)  It shall give thirty (30) days notice to the Union, the JSF and the Employee whose position is being eliminated.

(2)  Within seven (7) working days of the notice in paragraph (1), the Employer shall notify the Employee of a suitable vacancy or of his/her bumping rights, if any, and the Employee must exercise his/her right to bump or fill such vacancy within two (2) working days or forfeit such right.

(3)    Within one (1) working day of the Employee's notice that he/she has exercised his/her right to bump, the Employer shall notify the Employee who has been bumped that he/she is to be laid off.  On the same day, the Employer shall notify the JSF and the Union of the Employee who is bumped.

(4)    Notices by the Employer to Employees under these provisions shall be perfected if the Employer provides actual notice or sends a telegram or certified letter to the last known address of the Employee provided, however, that Employees who are at work shall be given actual notice if practicable.  Notices by the Employer to the Union and the JSF shall be perfected by sending a fax to the JSF and Union.

(5)  In no case shall an Employer who gives the notices provided in paragraphs (1) through (3) above be prevented from effecting a layoff because of failure to meet any

---

*Bargaining unit means the bargaining unit set forth in the Employer's individual bargaining units stipulation.

other notice provision(s) of this Agreement. Any days of delay by the Employer in effecting the notices in paragraphs (2) and (3) shall be added to and shall correspondingly extend the thirty (30) day notice provided in Section (1).

(iv) **Continuation of Training**

A laid off Employee who is offered an appropriate job as defined in paragraph (c)(i) may elect to remain in training until the training program is completed if he/she has:

(1) completed at least one-third (1/3) of the training program, and

(2) has a commitment for a job upon completion of the course, or the training program will qualify the Employee for a market scarce job as determined by the Trustees.

If an Employee is in training and does not meet the above criteria, he/she may seek approval to continue training from the Fund Director, with the approval of the Trustees.

(v) **Temporary Jobs**

The Employer shall refer temporary jobs to the JSF and shall only refer that particular temporary job once. It is understood that the Mandatory Match provisions of this Article only apply to temporary jobs of at least three (3) months duration. It is further understood that:

(1) an Employee who chooses to take a temporary job must commit to work for the entire period,

(2) the Employee shall not be entitled to Job Security Fund rights (including SUB) during the time he/she occupies the temporary job and the time limit on job security rights shall be tolled during that period,

(3) when the temporary job ends the Employee returns back to coverage under the Job Security Fund for the balance of any Job Security Fund rights due under the JSF, and

(4) the Employee shall lose all Job Security Fund rights under this Article IXA(B) if he/she leaves the temporary job before the original commitment ends.

(vi) **Discharge During 30 Day Probationary Period**

During or at the end of the thirty (30) probationary period, the Employer may discharge an Employee referred by the JSF and such discharge shall not be subject to the Grievance and Arbitration provisions of this Agreement except as hereinafter provided. If the Employer asserts that the discharge was for cause other than inability to properly perform the job, the Union may submit within thirty (30) working days a grievance against the League to CIPC which will hear, decide or arbitrate the case in accordance with the CIPC rules and timetable. The sole issue for CIPC or the arbitrator shall be whether the Employee was termi-

nated for cause other than inability to properly perform the job. The only remedy shall be for the Employee to return to the JSF. If the termination was for cause, he/she shall forfeit his/her rights under the Job Security Program. An Employee terminated for inability to perform shall return to the JSF. The thirty (30) day probationary period shall apply to all Employees referred by the JSF during the period they retain industry placement rights.

(vii) **Working Days**

Working days refers to Monday through Friday, excluding holidays.

(viii) **Job Security Fund Notice Provisions***

| Notifier | Notifyee | Time Allowed | Substance |
|---|---|---|---|
| (A)  JSF | All hospitals | 3 working days from receipt of layoff notice from an Employer | All laid off Employees and their job classi-fications[1] |
| (B)  Hospitals | JSF | 1 working day following (A) or availability of vacancy[2] | All vacancies in job classifica-tion and previ-ously grouped other jobs avail-able to JSF placements |
| (C)  JSF | Layoffees | 2 working days following (B) | Make contact; counsel |
| (D)  Layoffees | JSF | 2 working days following (C) | Employee must make job selection[3] |
| (E)  JSF | Specific selected hospital | 1 working day from (B) | Notify hospital of available referral; an interview shall be conducted within the following 2 working days |

*The Union and the League may review the notice provisions to see if they are working in conformity with the meaning and intent of this Article IXA(B) and, if they are not, the parties commit to resolve the matter promptly.

## COLLECTIVE BARGAINING AGREEMENT 39

| | | | | | |
|---|---|---|---|---|---|
| (F) | Hospital | JSF | 1 working day from completion of (E) | Selection/ rejection of referral[4] |
| (G) | JSF | All hospitals | 1 working day from (F) | Of Placement of JSF referrals |
| (H) | Specific Hospital | JSF Union | 1 working day following event | Termination during probation |
| (I) | JSF | All hospitals | 1 working day following (H) | Follow steps in A-G above, unless termination was for cause other than ability to perform. |

[1] Includes job title, essential duties, qualifications and requirements. Notices by the JSF to the Employer shall be perfected by sending a fax to the Employer.

[2] From time job is available to outside hires (after hospital recalls, transfers, promotions, shift changes, etc.).

Employer shall afford the JSF seven (7) working days from notice in (B) to refer applicants for the vacancy before it hires from the outside.

[3] The layoffee may visit the institution(s) at which appropriate jobs are available.

[4] E.g., if the individual does not meet minimum qualifications. Acceptance may be conditioned on passage of a physical.

### ARTICLE IXB
### CONSOLIDATION OF DEPARTMENTS AND MERGERS

1. When institutions consolidate departments in separate locations which are represented by 1199, the following terms shall apply to Employees of the affected departments:

(a) Employees transferred from one location to another shall carry their bargaining unit seniority.

(b) Employees shall be eligible for vacancies and promotional opportunities in the consolidated department(s) based upon their bargaining unit seniority.

(c) Employees shall carry their protected status from one location to another.

(d) An Employee who transfers as the result of a department consolidation shall suffer no reduction in base weekly salary. In addition, he/she shall receive contract increases in base weekly rate. Step increases shall be up to the amount(s) which bring the Employee to the pay step for someone of his/her experience at the new location.

(e) The Employee shall retain all time off accruals (e.g. sick, vacation, personal, holiday).

(f) Except as provided above, Employees transferred from one location to another shall be bound by the terms and conditions applicable at the new location.

(g) If there are differences in terms and conditions among the current locations, and a new location is established, the parties shall negotiate which of these terms and conditions apply at the new location.

2. An Employee who would be laid off shall be eligible for placement and/or recall into a bargaining unit vacancy, after internal transfers, promotions and recall rights, if any, at a merged institution. The placement of an Employee subject to layoff shall be for a vacancy in the same classification or group (where applicable) which is part of the bargaining unit at the institution where the vacancy exists. In addition, the Employee must be qualified and able to perform the vacant job according to the standards at the institution where the vacancy exists. An Employee who is placed into a job pursuant to this provision shall carry his/her bargaining unit seniority, time off accruals and recall rights, and will suffer no reduction in base weekly salary. Step increases shall be up to the amount(s) which bring the Employee to the pay step for someone of his/her experience at the new location.

## ARTICLE X
## Wages and Minimums

1. Wage Increases

(a) Effective June 1, 2004, each Employee on the payroll on that date and covered by this Agreement shall receive an increase in his/her base weekly rate of three percent (3%) of his/her May 31, 2004 base weekly rate.*

(b) Effective May 1, 2005, each Employee on the payroll of the Employer on that date and covered by this Agreement shall receive an increase in his/her base weekly rate of three percent (3%) of his/her April 30, 2005 base weekly rate.

---

*One percent (1%) of the original 4% June 1, 2004 wage increase in the 2001-2005 CBAs shall be used to increase the NBF contribution rate effective June 1, 2004. As a result, the minimum rates, steps and experience differentials as of June 1, 2004 shall be recomputed to reflect a 3% increase.

(c) Effective June 1, 2006, each Employee on the payroll of the Employer on that date and covered by this Agreement shall receive an increase in his/her base weekly rate of three percent (3%) of his/her May 31, 2006 base weekly rate.

(d) Effective July 1, 2007, each Employee on the payroll of the Employer on that date and covered by this Agreement shall receive an increase in his/her base weekly rate of three percent (3%) of his/her June 30, 2007 base weekly rate.

2. Minimum Rates of Pay

(a) The full-time minimum weekly rates including step minimum rates for all job classifications shall be increased by the across-the-board increases provided in 1(a) through (d) above.

(b) Each League member shall provide longevity increases to Nursing Attendants, Senior Nursing Attendants and Ward Clerks (or comparable job titles which are used instead of such titles) as follows:

(i) ten (10) or more years of service at the Employer - ten dollars ($10.00) per week added to the Employee's base weekly rate;

(ii) twenty (20) or more years of service at the Employer - an additional ten dollars ($10.00) per week added to the Employee's base weekly rate for a total of twenty dollars ($20.00) after twenty (20) years; and

(iii) in the future all Employees in the foregoing categories shall be entitled to the aforesaid longevity increases upon reaching the appropriate years of service.

(c) The lowest full-time minimum weekly rate shall be:

Effective June 1, 2004 ($542.74) per week,
Effective May 1, 2005 ($559.02)) per week,
Effective June 1, 2006 ($575.79) per week,
Effective July 1, 2007 ($593.06) per week

(d) The hiring rates effective June 1, 2004 shall be 95.97% of the minimum rates in effect on that date; the hiring rates effective May 1, 2005 shall be 96.97% of the minimum rates in effect on that date; the hiring rates effective June 1, 2006 shall be 96.97% of the minimum rates in effect on that date; the hiring rates effective July 1, 2007 shall be 96.97% of the minimum rates in effect on that date.  During the probationary period, Employees shall receive twenty dollars ($20) per week less than the base weekly hiring rate applicable to their classification (increased by the amount of any across-the-board wage increase effected during their first year of employment).*

*If an extension of the probationary period is agreed to by the Union, the Employee shall continue to receive twenty dollars ($20) per week less than the hiring rate for his or her job classification for the duration of such extension or one (1) month, whichever is less. After one (1) year of employment, no Employee shall receive less than the minimum for his or her job classification.

3. The minimum rates for each individual Employer shall be contained in a stipulation (Stipulation II) between each Employer and the Union to be annexed hereto. Set forth below, are the uniform job titles and uniform minimum rates.

4. Employees when required to work at a higher rated bargaining unit job, shall be paid their rate or the rate for the other job, whichever is higher, after a total of five (5) days work in such higher classification in each contract year.

5. Wherever in this Agreement the phrase "regular pay" appears, it shall be deemed to include shift and specialty differentials, but shall exclude overtime and on-call pay.

6. For those jobs with experience steps, the Employer shall recognize recent, relevant hospital or nursing home experience in the industry in the same job in determining the applicable step.

7. Social Workers who are required to use their own automobiles in the performance of their duties shall receive not less than the mileage allowance provided to other Employees of the Employer.

8. (a) The Employer shall give the Union thirty (30) days notice in writing of its intention to institute a new job classification or substantially modify an existing job classification (e.g., by combining jobs or restructuring existing jobs, etc.). The Union may request a meeting to discuss the Employer's proposal including the proposed wage rate. If the parties disagree about job content or wage rates, the Employer and Union may invoke a facilitation process (as provided in Article XLII(1)(a)(ii). If there is disagreement on the proposed wage rate, the Union may submit that issue to third step grievance and arbitration under Articles XXXI and XXXII within sixty (60) days of receiving the Employer's thirty (30) days notice. The Union will use its best efforts to request the meeting within thirty (30) days of said notice. It is expressly understood and agreed, however, that neither the Union nor any Employee may grieve or arbitrate with respect to the content or description of any such job or job classification. In no event shall these procedures delay implementation of the Employer's proposal.

(b) If it is claimed by the Union that the Employer has instituted a new job classification or substantially modified an existing job classification without providing the notice required above the Union may process a claim for change in the job rate for such classification in accordance with the provisions of Articles XXXI and XXXII of the Agreement provided, however, that it is expressly understood and agreed that neither the Union nor any Employee may grieve or arbitrate with respect to the content or description of any such job or job classification.

9. Employees shall receive paychecks during their regular work shift on payday.

10. Notwithstanding any other provision of this Agreement, it is understood and agreed that any Employee who, as of June 30, 1974, has been certified by the City of New York as a Clinical Technologist and is working as a Laboratory Technician shall, effective July 1, 1974, be classified as a Laboratory Technologist I and paid at the minimum rate provided in that agreement for such job classification. Except to the extent that the prior practice of a particular institution is to the contrary, there shall be no further automatic advancements from Technician to Technologist other than those set forth in this paragraph.

11. Employees who work thirty-five (35) hours per week and are displaced to a position with longer weekly hours (e.g. 37.5) will receive additional pay at their former hourly rate for the additional hours worked. Employees who are displaced to positions with fewer hours will retain their weekly rate of pay.

12. Effective March 1, 2002, the uniform minimum thirty-seven and one-half (37.5) hour rate for Pharmacists shall be as set forth in this Article X.