# LEVY RATNER, P.C.
### Attorneys at Law
### 80 Eighth Avenue
### New York, New York 10011-5126

Telephone (212) 627-8100
Telecopier (212) 627-8182

Richard A. Levy
Daniel J. Ratner
Daniel Engelstein°
Gwynne A. Wilcox*
Pamela Jeffrey
Owen M. Rumelt*
Kevin Finnegan
Carl J. Levine
David Slutsky^
Allyson L. Belovin
Suzanne Hepner*

Ezekiel D. Carder°
Dana E. Lossia▼
Sara D. Newman*
Susan J. Cameron^
Micah Wissinger*

Senior Counsel:
Richard Dorn
Jennifer J. Middleton^
Paul Schachter□
Denise Reinhardt■

Counsel:
Anthony DiCaprio
Michael Steven Smith
David P. Horowitz†



July 30, 2008

**BY ECF AND OVERNIGHT MAIL**

Hon. John G. Koeltl
United States District Judge
United States District Court for the
  Southern District of New York
500 Pearl Street, Room 1030
New York, NY 10007

Re:    William Frimpong v. 1199SEIU
       USDC SDNY No. 07 CV 7375

Dear Judge Koeltl:

This firm represents Defendant 1199SEIU United Healthcare Workers East ("1199SEIU" or "Union") in the above captioned matter. During oral argument yesterday you asked that the parties provide you with cases explaining the statute of limitations for claims involving breaches of a collective bargaining agreement ("CBA") where the plaintiff claims third-party beneficiary status.

Both Plaintiff and Defendant agree that six (6) months is the proper statute of limitations to apply in this matter. Defendant 1199SEIU asks that the Court apply the reasoning of Steel Workers of America v. Rawson, 495 U.S. 362 (1990) and Mahoney v. Chicago Pneumatic Tool Co., 1982 U.S. Dist. LEXIS 15921 (W.D.N.Y July 27, 1982)

In Steel Workers v. Rawson, the Supreme Court emphasized that only in the most unusual circumstances can an employee sue a union for alleged breaches of a CBA because such a claim is subsumed in the duty of fair representation obligation of the union. It is only if the plaintiff can point to a specific provision of the CBA, where the union specifically undertakes an obligation to employees, that the employee can bring a case going beyond the duty of fair representation. In this case, the Plaintiff has not demonstrated any such provision of the CBA.

In Mahoney v. Chicago Pneumatic the court found that an apprenticeship program for union members that was provided for under the CBA did not permit members to claim that the union was liable for some form of negligence. The court held that the only basis for suit against

1-110-00006 17703.doc

°Admitted in NY, MA and DC   *Admitted in NY, NJ and PA   •Admitted in NY and DC   ^Admitted in NY and NJ   ♦Admitted in NY and CT
◊Admitted in NY and CA   ▼Admitted in NY, NJ and CA   ▲Admitted in NY, CA and OR   □Admitted in NY, NJ and PR   ■Admitted in NJ only   †Admitted in NY and MA

LEVY RATNER, P.C.

Hon. John G. Koeltl
July 30, 2008
Page 2

union was liable for some form of negligence. The court held that the only basis for suit against the union was one for a breach of the duty of fair representation because the allegations with respect to negligence were "inextricably intertwined and embodied in the union's duty of fair representation."

Here, the CBA between 1199SEIU and the League of Voluntary Hospitals and Homes of New York establishes a Joint Employment Service, operated by 1199SEIU Labor Management Initiatives, Inc. ("LMI"). The only mandate in the CBA is that the employer utilize the service during the first seven (7) days that a vacancy occurs. It imposes no obligation on the Union and confers no right on any employee with respect to employment. As in the Rawson and Mahoney cases, there is no language in the CBA which creates an independent enforceable right of employees against the Union because the Union under the CBA has not obligated itself to do anything with respect to the Employment Center.

Your Honor also asked for information regarding whether NLRB v. Amax Coal Co., 453 U.S. 322 (1981) applies to LMI. LMI is not a Taft-Hartley fund and so the Amax line of cases is not applicable. However, the general law governing corporations does apply -- LMI is a separate non-profit entity established under Section 501(c)(5) of the Internal Revenue Code and maintained under the laws of the State of New York. Accordingly, its actions cannot be imputed to 1199SEIU.

I have attached the Rawson and Mahoney cases for your reference. Please notify me if the Court requires anything further.

Very truly yours,

David M. Slutsky

DMS:mw
cc:   Arlen S. Yalkut, Esq., Yalkut & Israel, Esqs.

1-110-00006 17703.doc

LEXSEE 495 U.S. 362

**UNITED STEELWORKERS OF AMERICA, AFL-CIO-CLC v. RAWSON, INDIVIDUALLY AND AS GUARDIAN AD LITEM FOR RAWSON, ET AL.**

No. 89-322

**SUPREME COURT OF THE UNITED STATES**

495 U.S. 362; 110 S. Ct. 1904; 109 L. Ed. 2d 362; 1990 U.S. LEXIS 2434; 58 U.S.L.W. 4556; 115 Lab. Cas. (CCH) P56,216; 5 I.E.R. Cas. (BNA) 493; 134 L.R.R.M. 2153; 14 OSHC (BNA) 1561

March 26, 1990, Argued
May 14, 1990, Decided

**PRIOR HISTORY:** CERTIORARI TO THE SUPREME COURT OF IDAHO.

**DISPOSITION:** 115 Idaho 785, 770 P. 2d 794, reversed.

**DECISION:**

Negligence suit against union for death of miners held governed by federal law; claimants held unable to maintain suit under 301 of Labor Management Relations Act (29 USCS 185(a)).

**SUMMARY:**

Following the death of 91 miners in an Idaho mine fire, a wrongful death action was filed by survivors of four of the deceased miners in Idaho state court against the union which was the miners' exclusive bargaining representative. The complaint alleged that (1) the union, through a collective bargaining agreement negotiated with the miners' employer, had caused to be established a joint management-labor safety committee, (2) safety committee members who were designated by the union were inadequately trained on mine safety issues, (3) the union, through its representatives on the committee, negligently performed inspections of the mine that it had promised to conduct, and (4) the four miners' deaths were proximately caused by the union's fraudulent and negligent acts. The trial court granted summary judgment for the union on the grounds that federal law had pre-empted the field of union representation, and that negligent performance of a union's contractual duties does not state a federal claim for breach of the duty of fair representation. The Supreme Court of Idaho, reversing on appeal, stated that the survivors' claims were not necessarily based on breach of duty of fair representation (100 Idaho 523, 602 P2d 21). The United States Supreme Court denied the union's petition for certiorari (446 US 983, 64 L Ed 2d 839, 100 S Ct 2963). The trial court, granting summary judgment for the union once again on remand, (1) concluded that the record was devoid of evidence to support the fraud claim, (2) expressed the view that the negligence claim centered on the collective bargaining agreement, and (3) urged the Idaho Supreme Court to reconsider the conclusion that the negligence claim was not pre-empted by federal law. On appeal, the Idaho Supreme Court ultimately upheld the trial court's summary judgment on the fraud claim, but--although acknowledging that the union's representatives had inspected the mine pursuant to the provisions of the collective bargaining agreement, and that the agreement determined the nature and scope of the union's duty--again concluded that the negligence claim was not pre-empted by federal law (111 Idaho 630, 726 P2d 742). The United States Supreme Court, granting the union's petition for certiorari, vacated the Idaho Supreme Court's judgment and remanded the case for further consideration in light of International Brotherhood of Electrical Workers v Hechler (1987) 481 US 851, 95 L Ed 2d 791, 107 S Ct 2161, in which it had been held that an employee's state-law tort claim--alleging that a union violated a collective bargaining agreement by failing to provide a safe workplace--was pre-empted by 301 of the Labor Management Relations Act (LMRA) (29 USCS 185(a)). On remand, the Idaho Supreme Court adhered to its opinion as written and stated that (1) the union's standard of care was imposed by state law without reference to the collective bargaining agreement, and (2) the issue to be decided was solely whether the mine inspection was negligently performed under Idaho tort law (115 Idaho 785, 770 P2d 794).

On certiorari, the United States Supreme Court reversed. In an opinion by White, J., joined by Brennan,

Marshall, Blackmun, Stevens, and O'Connor, JJ., it was held that (1) the survivors' suit was controlled by federal rather than state law, because the state tort claim could not be described as independent of the collective bargaining agreement; (2) the survivors could not maintain a suit against the union under 301 of the LMRA for breach of contract--even though the collective bargaining agreement might be interpreted as obliging the union to inspect the mine under certain circumstances--because (a) nothing in the agreement suggested that the agreement created rights directly enforceable by the individual employees against the union, and (b) the survivors had no enforceable right as third-party beneficiaries against the union, since the provisions relied upon by the survivors were not promises by the union to the employer, but rather were concessions made by the employer to the union; and (3) the suit could not be maintained as a suit for breach of the federal duty of fair representation, because, even though the union owed the miners such a duty, (a) the survivors had never specifically relied on such a duty, (b) the survivors had not alleged that the union improperly discriminated among its members or acted in an arbitrary and capricious fashion in failing to exercise its duties under the collective bargaining agreement, and (c) although the survivors' fraud claim might implicate the duty of fair representation, the survivors had not challenged, in the United States Supreme Court, the Idaho Supreme Court's holding that summary judgment had been properly entered for the union on the fraud claim, and the United States Supreme Court would therefore decline to question this holding.

Kennedy, J., joined by Rehnquist, Ch. J., and Scalia, J., dissenting, expressed the view that (1) the Idaho Supreme Court had declared that the survivors' case rested on allegations of the union's active negligence in a voluntary undertaking, not its obligations under the collective bargaining agreement, (2) the United States Supreme Court had no basis for disputing this construction of state law by a state's highest court, (3) the Idaho Supreme Court's adherence to its previous opinion did not mean that 301 of the LMRA should govern the survivors' claims, because such adherence did not require interpretation of the collective bargaining agreement, (4) the survivors should have been allowed to press their state claims so long as they did not rest upon the collective bargaining agreement, and (5) the union had shown no support for its contention that the duty of fair representation pre-empted the Idaho tort law.

**LAWYERS' EDITION HEADNOTES:**

[***LEdHN1]

COMMERCE §129.3

tort claim against union -- federal law as controlling --

Headnote:[1A][1B][1C]

A suit brought in state court by survivors of deceased miners against the labor union which was the miners' exclusive bargaining representative, in which suit it is alleged that the miners' deaths were caused by the union's negligent inspection of the mine in which the miners worked, is controlled by federal rather than state law, where (1) the complaint alleges that the union was negligent in its role as enforcer of an agreement negotiated by the union on behalf of the deceased miners, (2) the state's highest court, upon hearing the case on appeal, acknowledges that the union's representatives had inspected the mine pursuant to the provisions of a collective bargaining agreement between the union and the employer, and that the agreement determined the nature and scope of the union's duty, and (3) the state's highest court, in a later proceeding--although rejecting the suggestion that there is any need to look to the collective bargaining agreement to discern whether the agreement placed any implied duty on the union--states that the court adheres to its prior opinion as written; under such circumstances, the state tort claim cannot be described as independent of the collective bargaining agreement--the enforcement of which is governed by federal law-- because (1) the union's representatives have not been accused of acting in a way that might violate the duty of reasonable care owed to every person in society, (2) the state's highest court is not to be understood to have held that any casual visitor in the mine would be liable for violating some duty to the miners if the visitor failed to report obvious defects to the appropriate authorities, and (3) thus, if the union failed to perform a duty in connection with inspection, it was a duty arising out of the collective bargaining agreement; pre-emption of the survivors' claim by federal law cannot be avoided by characterizing the union's negligent performance of what it does on behalf of the members of the bargaining unit pursuant to the terms of the collective bargaining agreement as a state-law tort. (Kennedy, J., Rehnquist, Ch. J., and Scalia, J., dissented from this holding.)

[***LEdHN2]

LABOR §46

collective bargaining agreement -- enforcement and remedies -- suit against union by deceased employees' survivors --

Headnote:[2A][2B][2C]

Survivors of deceased miners may not maintain a suit against the labor union which was the miners' exclusive bargaining representative under 301 of the Labor

Management Relations Act (*29 USCS 185(a)*) for breach of contract, where (1) the survivors allege that the miners' deaths were caused by the union's negligent inspection of the mine in which the miners worked, and (2) the collective bargaining agreement between the union and the employer, which agreement contains provisions allowing inspection of the mine by union delegates under certain circumstances, might be interpreted as obliging the union to inspect the mine under such circumstances, but (3) nothing in the agreement suggests that the agreement creates rights directly enforceable by the individual employees against the union, and (4) the survivors have no enforceable right as third-party beneficiaries against the union, since the provisions relied upon by the survivors are not promises by the union to the employer, but rather are concessions made by the employer to the union as a limited surrender of the employer's exclusive authority over mine safety.

[***LEdHN3]

LABOR §46

collective bargaining agreement -- enforcement and remedies -- breach of duty of fair representation --

Headnote:[3A][3B]

A suit brought in state court by survivors of deceased miners against the labor union which was the miners' exclusive bargaining representative--in which suit it is alleged that the miners' deaths were caused by the union's negligent inspection of the mine in which the miners worked, and that the union committed fraud on the miners in violation of state law--may not be maintained as a suit for breach of the federal duty of fair representation, where, even though the union owed the miners such a duty in performing its functions under a collective bargaining agreement between the union and the employer, (1) the survivors have never specifically relied on such a duty, (2) the survivors have not alleged that the union improperly discriminated among its members or acted in arbitrary and capricious fashion in failing to exercise its duties under the collective bargaining agreement, and (3) although the survivors' fraud claim might implicate the duty of fair representation, (a) the state's highest court, on appeal, has held that summary judgment was properly entered on the fraud claim because the survivors failed to demonstrate specific facts showing the existence of a genuine issue for trial, and (b) the survivors do not challenge this holding when the case is reviewed by the United States Supreme Court on certiorari, and the Supreme Court therefore declines to question this holding.

[***LEdHN4]

COMMERCE §129.5

collective bargaining agreements -- what law governs --

Headnote:[4A][4B]

Only the federal law fashioned by the courts under 301 of the Labor Management Relations Act (*29 USCS 185(a)*), and not state law, governs the interpretation and application of collective bargaining agreements; questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort.

[***LEdHN5]

LABOR §39

duty of fair representation --

Headnote:[5A][5B]

A labor union, as the exclusive bargaining representative of employees, has a statutory duty fairly to represent all of those employees, in both its collective bargaining and its enforcement of the resulting collective bargaining agreement; under this doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation (1) to serve the interests of all members without hostility or discrimination toward any, (2) to exercise its discretion with complete good faith and honesty, and (3) to avoid arbitrary conduct; the union's duty of fair representation arises from the National Labor Relations Act (*29 USCS 151 et seq.*) itself, and such duty is thus a matter of status rather than contract.

[***LEdHN6]

LABOR §39

breach of duty of fair representation --

Headnote:[6A][6B]

A breach of a labor union's duty of fair representation occurs only when the union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith; mere negligence, even in the enforcement of a collective bargaining agreement, does not state a claim for breach of the duty of fair representation.

[***LEdHN7]

LABOR §45

modification of agreement --

Headnote:[7]

A federal court has no authority to modify the substantive terms of a collective bargaining agreement when neither the collective bargaining process nor its end product violates any command of Congress.

[***LEdHN8]

LABOR §41

union's obligations to individual employees --

Headnote:[8A][8B]

Although a labor union may assume a responsibility toward employees by accepting a duty of care through a collective bargaining contract to which only the union and the employer are signatories, an employee who claims that a union owes the employee a more far-reaching duty than the duty of fair representation must be able to point to language in the collective bargaining agreement specifically indicating an intent to create obligations enforceable against the union by the individual employees.

[***LEdHN9]

LABOR §39

fair representation --

Headnote:[9]

The doctrine of fair representation, although an important check on the arbitrary exercise of a labor union's power, is a purposefully limited check, for a wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents.

[***LEdHN10]

PARTIES §5

beneficiaries of contract --

Headnote:[10]

Third-party beneficiaries generally have no greater rights in a contract than does the promisee.

[***LEdHN11]

APPEAL §1262.5

failure to cross-petition for certiorari --

Headnote:[11]

On certiorari to review a decision of a state's highest court involving claims against a labor union by respondents, who are survivors of deceased members of a collective bargaining unit for which the union was the exclusive bargaining representative, the United States Supreme Court is in no position to question the state court's holding that, because the survivors failed to demonstrate specific facts showing the existence of a genuine issue for trial, summary judgment was properly entered on the survivors' state-law fraud claim, where the survivors have not cross-petitioned for certiorari to challenge this aspect of the state court's judgment.

SYLLABUS

Respondents, deceased miners' survivors, filed a state-law wrongful-death action in Idaho state court against petitioner United Steelworkers of America (Union), the miners' exclusive bargaining agent, alleging that the miners' deaths in an underground fire were proximately caused by the Union's fraudulent and negligent acts in connection with mine safety inspections conducted by its representatives pursuant to the collective-bargaining agreement with the mine's operator. On remand from a State Supreme Court decision that the claims were not pre-empted by federal labor law, the trial court granted summary judgment for the Union. It found that the record was devoid of evidence supporting the fraud claim and urged the State Supreme Court to reconsider its decision that the negligence claim was not pre-empted. The State Supreme Court upheld the trial court's summary judgment on the fraud claim, but again concluded that respondents' negligence claim was not pre-empted. Distinguishing this Court's decision in *Allis-Chalmers Corp. v. Lueck, 471 U.S. 202* -- which held that a state-law tort action against an employer may be pre-empted by § 301 of the Labor Management Relations Act, 1947, if the duty to the employee that was violated by the tort is created by a collective-bargaining agreement and without existence independent of the agreement -- the court found that the instant agreement's provisions did "not require interpretation, . . . but rather . . . determine[d] only the nature and scope of the Union's duty." This Court vacated the State Supreme Court's judgment and remanded the case for further consideration in light of *Electrical Workers v. Hechler, 481 U.S. 851*, which extended Allis-Chalmers to a tort suit by an employee against her union. On remand, the State Supreme Court distinguished Hechler on the ground that, there, the alleged duty of care arose from the collective-bargaining agreement, whereas, here, the Union's duty to perform the inspection reasonably arose from the fact of the inspection itself rather than the fact that the provision for the Union's participation in the inspection was contained in the labor contract. Since it was conceded that the Union undertook to inspect, the court noted, the sole issue was whether that inspection was negligent under state tort law.

Held:

1. Respondents' tort claim is pre-empted by § 301. The claim cannot be described as independent of the collective-bargaining agreement, since the Union's representatives were participating in the inspection process pursuant to that agreement's provisions. Thus, if the Union failed to perform a duty in connection with the inspection, it was a duty arising out of the agreement signed by the Union as the miners' bargaining agent, not a duty of reasonable care owed to every person in society. Pre-emption by federal law cannot be avoided by characterizing the Union's negligence as a state-law tort. Pp. 368-372.

2. Respondents may not maintain a § 301 suit against the Union. Pp. 372-376.

(a) Mere negligence, even in the enforcement of a collective-bargaining agreement, does not state a claim for breach of the duty of fair representation, which is a purposely limited check on the arbitrary exercise of union power. While a union may assume a responsibility toward employees by accepting a duty of care through a collective-bargaining agreement, *Hechler, supra, at 860*, if an employee claims that a union owes him a more far-reaching duty, he must be able to point tolanguage in the agreement specifically indicating an intent to create obligations enforceable against the union by the individual employees. Nothing in the agreement at issue suggests that it creates such obligations, since the pertinent part of the agreement consists of agreements between the Union and the employer and is enforceable only by them. Pp. 372-375.

(b) Moreover, under traditional principles of contract interpretation, respondents have no claim, for, as third-party beneficiaries, they have no greater rights in the agreement than does the promisee, the employer. Here, the employer has no enforceable right as promisee. The agreement provisions respondents rely on are not promises made by the Union to the employer. Rather, the limited surrender of the employer's exclusive authority over mine safety is a concession made by the employer to the Union. P. 375.

(c) Although respondents' claim that the Union had committed fraud on the membership in violation of state law might implicate the duty of fair representation, respondents did not cross-petition for review of the State Supreme Court's holding that summary judgment was properly entered on this claim. P. 376.

**COUNSEL:** George H. Cohen argued the cause for petitioner. With him on the briefs were Robert M. Weinberg, Julia P. Clark, Laurence Gold, Bernard Kleiman, Carl Frankel, Paul D. Carey, and James D. Nelson.

Kenneth B. Howard argued the cause for respondents. With him on the brief were Kerwin C. Bennett and Lloyd J. Webb. *

* Briefs of amici curiae urging reversal were filed for Continental Beverage Packaging, Inc., by Robert A. Christensen and Stanley S. Jaspan; and for Public Citizen by Paul Alan Levy and Alan B. Morrison.

**JUDGES:** WHITE, J., delivered the opinion of the Court, in which BRENNAN, MARSHALL, BLACKMUN, STEVENS, and O'CONNOR, JJ., joined. KENNEDY, J., filed a dissenting opinion, in which REHNQUIST, C.J., and SCALIA, J., joined, post, p. 376.

**OPINION BY:** WHITE

**OPINION**

[*364] [***370] [**1907] JUSTICE WHITE delivered the opinion of the Court.

[***LEdHR1A] [1A] [***LEdHR2A] [2A] [***LEdHR3A] [3A]We granted certiorari in this case because the decisions of the Supreme Court of Idaho, holding that petitioner may be liable under state law for the negligent inspection of a mine where respondents' decedents worked, raised important questions about the operation of federal and state law in defining the duties of a labor union acting as a collective-bargaining agent.

I

This dispute arises out of an underground fire that occurred on May 2, 1972, at the Sunshine Mine in Kellogg, Idaho, and caused the deaths of 91 miners. Respondents, the survivors of four of the deceased miners, filed this statelaw wrongful-death action in Idaho state court. Their complaint alleged that the miners' deaths were proximately caused by fraudulent and negligent acts of petitioner United Steelworkers of America (Union), the exclusive bargaining representative of the miners working at the Sunshine Mine. As to the negligence claim, the complaint specifically alleged that the Union "undertook to act as accident prevention representative and enforcer of an agreement negotiated between [sic] [the Union] on behalf of the deceased miners," App. 53-54, and "undertook to provide representatives who inspected [*365] spected [the Sunshine Mine] and pretended to enforce the contractual accident prevention clauses," *id., at 54*. Respondents' answers to interrogatories subsequently made clear that their suit was based on contentions that the Union had, through a collective-bargaining agreement negotiated with the operator of the Sunshine Mine, caused to be established a joint man-

agement-labor safety committee intended to exert influence on management on mine safety measures; that members of the safety committee designated by the Union had been inadequately trained on mine safety issues; and that the Union, through its representatives on the safety committee, had negligently performed inspections of the mine that it had promised to conduct, failing to uncover obvious and discoverable deficiencies. *Id., at 82-83.*

The trial court granted summary judgment for the Union, accepting the Union's argument that "federal law has pre-empted the field of union [\*\*\*371] representation and its obligation to its membership," App. to Pet. for Cert. 164a, and that "[n]egligent performance of [a union's] contractual duties does not state a claim under federal law for breach of fair representation," id., at 163a. The Supreme Court of Idaho reversed. *Dunbar v. United Steelworkers of America, 100 Idaho 523, 602 P. 2d 21 (1979).* In the view of the Supreme Court of Idaho, although federal law unquestionably imposed on the Union a duty of fair representation of the miners, respondents' claims were "not necessarily based on the violation of the duty of fair representation and such is not the only duty owed by a union to its members." *Id., at 526, 602 P. 2d, at 24.* Three of the five justices concurred specially to emphasize that "the precise nature of the legal issues raised by [respondents'] wrongful death action is not entirely clear at the present procedural posture of the case," and that "a final decision whether the wrongful death action . . . is pre-empted . . . must therefore await a full factual development." *Id., at 547, 602 P. 2d, at 25* (Bakes, J., specially concurring). [\*366] We denied the Union's petition for certiorari. [\*\*1908] *Steelworkers v. Dunbar, 446 U.S. 983 (1980).*

After extensive discovery, the trial court again granted summary judgment for the Union. App. to Pet. for Cert. 89a-106a. As to respondents' fraud claim, the court concluded that the record was devoid of evidence supporting the contentions that the Union had made misrepresentations of fact, that the Union had intended to defraud the miners, or that the miners had relied on Union representations. *Id., at 96a.* On the negligence count, the trial court first noted that, in its view, respondents' claims centered on the collective-bargaining contract between the Union and the Sunshine Mine, especially Article IX of the agreement, which established the joint management-labor safety committee. *Id., at 90a-91a.* The trial court urged the State Supreme Court to reconsider its conclusion that respondents' state-law negligence claim was not pre-empted by federal labor law, reasoning that "[respondents] are complaining about the manner in which the Union carried out the collective bargaining agreement, essentially saying the Union advisory committee should have done more," and that respondents "are attempting to hold the [Union] liable on the basis of its representational duties." *Id., at 103a-104a.*

The Supreme Court of Idaho originally affirmed the grant of summary judgment on appeal. *Id., at 49a-88a.* On rehearing, however, the Idaho Supreme Court withdrew its prior opinion and concluded that respondents had stated a valid claim under Idaho law that was not pre-empted by federal labor law. *Rawson v. United Steelworkers of America, 111 Idaho 630, 726 P. 2d 742 (1986).* Distinguishing this Court's decision in *Allis-Chalmers Corp. v. Lueck, 471 U.S. 202 (1985),* which held that resolution of a state-law tort claim must be treated as a claim arising under federal labor law when it is substantially dependent on construction of the terms of a collective-bargaining agreement, the Supreme Court of Idaho stated that "in the instant case, the provisions [\*367] of the collective bargaining agreement do not require interpretation, . . . but rather the [\*\*\*372] provisions determine only the nature and scope of the Union's duty." *111 Idaho, at 640, 726 P. 2d, at 752.* The court continued: "Our narrow holding today is that the Union, having inspected, assumed a duty to use due care in inspecting and, from the duty to use due care in inspecting arose the further duty to advise the committee of any safety problems the inspection revealed." *Ibid.* The court also affirmed the trial court's conclusion that summary judgment for the Union was proper on respondents' fraud claim. *Id., at 633, 726 P. 2d, at 745.*

The Union again petitioned for certiorari. While that petition was pending, we decided *Electrical Workers v. Hechler, 481 U.S. 851 (1987),* in which it was held that an individual employee's state-law tort suit against her union for breach of the union's duty of care to provide the employee with a safe workplace must be treated as a claim under federal labor law, when the duty of care allegedly arose from the collective-bargaining agreement between the union and the employer. Six days later, we granted the Union's petition, vacated the judgment of the Supreme Court of Idaho, and remanded this case for further consideration in light of Hechler. *Steelworkers v. Rawson, 482 U.S. 901 (1987).*

On remand, the Supreme Court of Idaho "adhere[d] to [its] opinion as written." *115 Idaho 785, 788, 770 P. 2d 794, 797 (1988).* The court also distinguished Hechler, stressing that there we had considered a situation where the alleged duty of care arose from the collective-bargaining agreement, whereas in this case "the activity was concededly undertaken and the standard of care is imposed by state law without reference to the collective bargaining agreement." *115 Idaho, at 786, 770 P. 2d, at 795.* The court further stated that it was "not faced with looking at the Collective Bargaining Agreement to determine [\*\*1909] whether it imposes some new duty upon the union -- rather it is conceded that the

union undertook to inspect and, thus, the issue is solely whether that [\*368] inspection was negligently performed under traditional Idaho tort law." *Id., at 787, 770 P. 2d, at 796.*

We granted certiorari, *493 U.S. 1017 (1990)*, and we now reverse.

II

Section 301 of the Labor Management Relations Act, 1947 (LMRA), 61 Stat. 156, *29 U.S.C. § 185(a)*, states:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

[\*\*\*LEdHR4A] [4A]Over 30 years ago, this Court held that § 301 not only provides the federal courts with jurisdiction over controversies involving collective-bargaining agreements but also authorizes the courts to fashion "a body of federal law for the enforcement of these collective bargaining agreements." *Textile Workers v.* [\*\*\*373] *Lincoln Mills of Alabama, 353 U.S. 448, 451 (1957)*. Since then, the Court has made clear that § 301 is a potent source of federal labor law, for though state courts have concurrent jurisdiction over controversies involving collective-bargaining agreements, *Charles Dowd Box Co. v. Courtney, 368 U.S. 502 (1962)*, state courts must apply federal law in deciding those claims, *Teamsters v. Lucas Flour Co., 369 U.S. 95 (1962)*, and indeed any state-law cause of action for violation of collective-bargaining agreements is entirely displaced by federal law under § 301, see *Avco Corp. v. Machinists, 390 U.S. 557 (1968)*. State law is thus "pre-empted" by § 301 in that only the federal law fashioned by the courts under § 301 governs the interpretation and application of collective-bargaining agreements.

[\*369] In recent cases, we have recognized that the pre-emptive force of § 301 extends beyond state-law contract actions. In *Allis-Chalmers Corp. v. Lueck, supra,* we held that a state-law tort action against an employer may be pre-empted by § 301 if the duty to the employee of which the tort is a violation is created by a collective-bargaining agreement and without existence independent of the agreement. Any other result, we reasoned, would "allow parties to evade the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract." *Id., at 211.* We extended this rule of pre-emption to a tort suit by an employee against her union in *Electrical Workers v. Hechler, supra.* There Hechler alleged that her union had by virtue of its collective-bargaining agreement with the employer and its relationship with her assumed the duty to ensure that she was provided with a safe workplace, and that the union had violated this duty. As in *Allis-Chalmers,* the duty relied on by Hechler was one without existence independent of the collective-bargaining agreement (unions not, under the common law of Florida, being charged with a duty to exercise reasonable care in providing a safe workplace, see *481 U.S., at 859-860*), but was allegedly created by the collective-bargaining agreement, of which Hechler claimed to be a third-party beneficiary, see *id., at 861.* Because resolution of the tort claim would require a court to "ascertain, first, whether the collective-bargaining agreement in fact placed an implied duty of care on the Union . . ., and second, the nature and scope of that duty," *id., at 862,* we held that the tort claim was not sufficiently independent of the collective-bargaining agreement to withstand the pre-emptive force of § 301.

[\*\*1910] [\*\*\*LEdHR1B] [1B]At first glance it would not appear difficult to apply these principles to the instant case. Respondents alleged in their complaint that the Union was negligent in its role as "enforcer of an agreement negotiated between [sic] [the Union] on behalf of the deceased miners," App. 53-54, a plain reference [\*370] to the collective-bargaining agreement with the operator of the Sunshine Mine. Respondents' answers to inter-rogatories gave substance to this allegation by stating that "by the contract language" of the collective-bargaining [\*\*\*374] agreement, the Union had caused the establishment of the joint safety committee with purported influence on mine safety issues, and that members of the safety committee had failed reasonably to perform inspections of the mine or to uncover obvious and discoverable deficiencies in the mine safety program. App. 82-83. The only possible interpretation of these pleadings, we believe, is that the duty on which respondents relied as the basis of their tort suit was one allegedly assumed by the Union in the collective-bargaining agreement. Prior to our remand, the Supreme Court of Idaho evidently was of this view as well. The court noted then that the Union could be liable under state tort law because it allegedly had contracted to inspect, and had in fact inspected, the mine "pursuant to the provisions of the collective bargaining agreement." *111 Idaho, at 638, 726 P. 2d, at 750.* Although the Idaho Supreme Court believed that resolution of the tort claim would not require interpretation of the terms of the collective-bargaining agreement, it acknowledged that the provisions of that agreement determined "the nature and scope of the Union's duty," *id., at 640, 726 P. 2d, at 752.*

The situation is complicated, however, by the Idaho Supreme Court's opinion after our remand. Although the court stated that it adhered to its prior opinion as written,

*115 Idaho, at 788, 770 P. 2d, at 797*, it also rejected the suggestion that there was any need to look to the collective-bargaining agreement to discern whether it placed any implied duty on the Union. Rather, Idaho law placed a duty of care on the Union because the Union did, in fact, actively inspect the mine, and the Union could be held liable for the negligent performance of that inspection. *Id.*, at 787, 770 P. 2d, at 796. According to the Supreme Court of Idaho, the [\*371] Union may be liable under state tort law because its duty to perform that inspection reasonably arose from the fact of the inspection itself rather than the fact that the provision for the Union's participation in mine inspection was contained in the labor contract.

As we see it, however, respondents' tort claim cannot be described as independent of the collective-bargaining agreement. This is not a situation where the Union's delegates are accused of acting in a way that might violate the duty of reasonable care owed to every person in society. There is no allegation, for example, that members of the safety committee negligently caused damage to the structure of the mine, an act that could be unreasonable irrespective of who committed it and could forseeably cause injury to any person who might possibly be in the vicinity.

[\*\*\*LEdHR1C] [1C] [\*\*\*LEdHR4B] [4B]Nor do we understand the Supreme Court of Idaho to have held that any casual visitor in the mine would be liable for violating some duty to the miners if the visitor failed to report obvious defects to the appropriate authorities. Indeed, the court did not disavow its previous opinion, where it acknowledged that the Union's representatives were participating in the inspection process pursuant to the provisions of the collective-bargaining agreement, and that the agreement determined the nature and scope of the Union's duty. If the Union failed to perform a duty in connection with inspection, it was a duty arising out of the collective-bargaining agreement [\*\*\*375] signed by the Union as the bargaining agent for the miners. Clearly, the enforcement of that agreement and the remedies for its breach are matters governed by federal law. "[Q]uestions relating to what [\*\*1911] the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." *Allis-Chalmers Corp. v. Lueck, 471 U.S., at 211*. Pre-emption by federal law cannot be [\*372] avoided by characterizing the Union's negligent performance of what it does on behalf of the members of the bargaining unit pursuant to the terms of the collective-bargaining contract as a state-law tort. Accordingly, this suit, if it is to go forward at all, must proceed as a case controlled by federal, rather than state, law.

III

The Union insists that the case against it may not go forward even under federal law. It argues first that only the duty of fair representation governs the exercise of its representational functions under the collective-bargaining contract, and that a member may not sue it under § 301 for breach of contract. Second, the Union submits that even if it may be sued under § 301, the labor agreement contains no enforceable promise made by it to the members of the unit in connection with inspecting the mine. Third, the Union asserts that as the case now stands, it is charged with only negligence, which is insufficient to prove a breach of its duty of fair representation.

[\*\*\*LEdHR5A] [5A] [\*\*\*LEdHR6A] [6A]"It is now well established that, as the exclusive bargaining representative of the employees, . . . the Union had a statutory duty fairly to represent all of those employees, both in its collective bargaining . . . and in its enforcement of the resulting collective bargaining agreement." *Vaca v. Sipes, 386 U.S. 171, 177 (1967)*."Under this doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, and to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Ibid*. This duty of fair representation is of major importance, but a breach occurs "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id., at 190*. The courts have in general assumed that mere negligence, even in the enforcement of a collective-bargaining agreement, would [\*373] not state a claim for breach of the duty of fair representation, and we endorse that view today.

[\*\*\*LEdHR5B] [5B] [\*\*\*LEdHR7] [7]The Union's duty of fair representation arises from the National Labor Relations Act itself. See *Breininger v. Sheet Metal Workers, 493 U.S. 67, 86-87 (1989);DelCostello v. Teamsters, 462 U.S. 151, 164 (1983);United Parcel Service, Inc. v. Mitchell, 451 U.S. 56, 66 (1981)* (Stewart, J., concurring in judgment). The duty of fair representation is thus a matter of status rather than contract. We have never held, however, that, as a matter of [\*\*\*376] federal law, a labor union is prohibited from voluntarily assuming additional duties to the employees by contract. Although at one time it may have appeared most unlikely that unions would be called upon to assume such duties, see *Humphrey v. Moore, 375 U.S. 335, 356-357 (1964)* (Goldberg, J., concurring in result), nonetheless "it is of the utmost importance that the law reflect the realities of

industrial life and the nature of the collective bargaining process," *id., at 358*, and it may well be that if unions begin to assume duties traditionally viewed as the prerogatives of management, cf. *Breininger, supra, at 87-88*; *Electrical Workers v. Hechler, 481 U.S., at 859-860*, employees will begin to demand that unions be held more strictly to account in their carrying out of those duties. Nor do we know what the source of law would be for such a prohibition, for "when [**1912] neither the collective-bargaining process nor its end product violates any command of Congress, a federal court has no authority to modify the substantive terms of a collective-bargaining contract." *United Mine Workers of America Health and Retirement Funds v. Robinson, 455 U.S. 562, 576 (1982)*; cf. *H.K. Porter Co. v. NLRB, 397 U.S. 99, 106-108 (1970)*.

[***LEdHR8A] [8A]Our decision in *Electrical Workers v. Hechler, supra*, is relevant here. There we were presented with a claim by an employee that the union had breached its duty to provide her with a safe workplace. The alleged duty was plainly based on the collective-bargaining agreement that the union [*374] had negotiated with the employer; Hechler argued that she was a third-party beneficiary of that agreement. *Id., at 861, 864-865*. Hechler carefully distinguished her § 301 claim from a fair representation claim, *id., at 864*, and so did we, for the distinction had a significant effect: The statutes of limitations for the two claims are different. *Id., at 863-865*. We therefore accepted, and again accept, that "a labor union . . . may assume a responsibility towards employees by accepting a duty of care through a contractual agreement," *id., at 860*, even if that contractual agreement is a collective-bargaining contract to which only the union and the employer are signatories.

[***LEdHR8B] [8B] [***LEdHR9] [9]But having said as much, we also think it necessary to emphasize caution, lest the courts be precipitate in their efforts to find unions contractually bound to employees by collective-bargaining agreements. The doctrine of fair representation is an important check on the arbitrary exercise of union power, but it is a purposefully limited check, for a "wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents." *Ford Motor Co. v. Huffman, 345 U.S. 330, 338 (1953)*. If an employee claims that a union owes him a more far-reaching duty, he must be able to point to language in the collective-bargaining agreement specifically indicating an intent to create obligations enforceable against the union by the individual employees. Cf. *Republic Steel Corp. v. Maddox, 379 U.S. 650, 653 (1965)*.

[***LEdHR2B] [2B]Applying this principle to the case at hand, we are quite sure that respondents may not maintain a § 301 suit against the Union. Nothing in the collective-bargaining agreement suggests that it creates rights directly enforceable by the individual employees against the Union. The pertinent part of the collective-bargaining agreement, Article IX, consists entirely of agreements between the Union and the employer and enforceable only by them. App. 20-22. Section 2 of the Article provides that "a committee consisting of two (2) supervisory [*375] personnel and two (2) reliable employees, approved by the Union, shall inspect" the mine if an employee complains to the shift boss that he is being forced to work in unusually unsafe conditions but receives no redress, *id., at 20*, but even if this section might be interpreted as obliging the Union to inspect the mine in such circumstances, the promise is not one specifically made to, or enforceable by, individual employees. Nor have respondents placed anything in the record indicating that any such complaints were made or that the Union failed to act on them. Section 4 of the Article states that a Union member may accompany the state mine safety inspection team on its inspections of the mine, and Section 5 states that a Union designate and the Safety Engineer "shall make a tour of a section of the mine" once each month, *id., at 22*, but again the agreement gives no indication that these obligations, if such is what they are, may be enforced by an individual employee.

[***LEdHR2C] [2C] [***LEdHR10] [10]Moreover, under traditional principles of contract interpretation, respondents have no claim, for with exceptions under federal [**1913] labor law not relevant here, see *Lewis v. Benedict Coal Corp., 361 U.S. 459, 468-471 (1960)*, third-party beneficiaries generally have no greater rights in a contract than does the promisee. For respondents to have an enforceable right as third-party beneficiaries against the Union, at the very least the employer must have an enforceable right as promisee. But the provisions in the collective-bargaining agreement relied on by respondents are not promises by the Union to the employer. Cf. *Teamsters v. Lucas Flour Co., 369 U.S., at 104-106*. They are, rather, concessions made by the employer to the Union, a limited surrender of the employer's exclusive authority over mine safety. A violation by the employer of the provisions allowing inspection of the mine by Union delegates might form the basis of a § 301 suit against the employer, but we are not presented with such a case.

[*376] IV

[***LEdHR3B] [3B] [***LEdHR6B] [6B] [***LEdHR11] [11]In performing its functions under the collective-bargaining agreement, the Union did, as it concedes, owe the miners a duty of fair representation, but we have already noted that respondents' allegation of

mere negligence will not state a claim for violation of that duty. Supra, at 372-373. Indeed, respondents have never specifically relied on the federal duty of fair representation, nor have they alleged that the Union improperly discriminated among its members or acted in arbitrary and capricious fashion in failing to exercise its [***378] duties under the collective-bargaining agreement. Cf. *Vaca v. Sipes, 386 U.S., at 177*. Respondents did, of course, allege that the Union had committed fraud on the membership in violation of state law, a claim that might implicate the duty of fair representation. The Supreme Court of Idaho held, however, that summary judgment was properly entered on this claim because respondents had failed to demonstrate specific facts showing the existence of a genuine issue for trial. *111 Idaho, at 633, 726 P. 2d, at 745*. Respondents did not cross-petition to challenge this aspect of the Idaho Supreme Court's judgment, and we are in no position to question it.

It follows that the judgment of the Supreme Court of Idaho must be Reversed.

**DISSENT BY:** KENNEDY

**DISSENT**

JUSTICE KENNEDY, with whom THE CHIEF JUSTICE and JUSTICE SCALIA join, dissenting.

The Idaho Supreme Court held that summary judgment was improper and that Tharon Rawson and the other respondents could proceed to trial against the United Steel-workers of America (Union) on a state-law tort theory. Although the respondents have not yet established liability under Idaho law, the Union argues that federal law must govern and bar their suit. To support this position, the Union relies on both § 301 of the Labor Management Relations Act, *29 U.S.C. § 185(a)*, and the duty of fair representation [*377] implicit in § 9(a) of the National Labor Relations Act (NLRA), 49 Stat. 453, as amended, *29 U.S.C. § 159(a)*. The Court accepts the Union's contentions with respect to § 301 and does not reach the issue of pre-emption by the duty of fair representation. With all respect, I dissent. Neither of the Union's arguments for displacing Idaho law without any trial on the merits has validity.

I

The Union bases its § 301 argument on our decisions in *Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 405-406 (1988)*; *Electrical Workers v. Hechler, 481 U.S. 851, 854 (1987)*; and *Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985)*. These cases hold that § 301 pre-empts state law causes of action that require interpretation of a collective-bargaining agreement. In my view, they have no application here. The [**1914] Idaho Supreme Court, whose determination of state law supersedes that of the trial court, has declared that the respondents' case rests on allegations of the Union's active negligence in a voluntary undertaking, not its contractual obligations.

Adopting verbatim a standard from the *Restatement (Second) of Torts § 323* (1965), the Idaho Court expressed the law governing the respondents' claims as follows:

"'One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm [***379] resulting from his failure to exercise reasonable care to perform his undertaking, if

"'(a) his failure to exercise such care increases the risk of harm, [or]

"'(b) the harm is suffered because of the other's reliance upon the undertaking.'" *Rawson v. United Steelworkers of America, 111 Idaho 630, 637, 726 P. 2d 742, 749 (1986)*.

[*378] According to the Idaho Supreme Court's second opinion, the respondents can prove the elements of the tort described in *§ 323* without relying on the Union's collective-bargaining agreement. The Court states:

"In the instant case, we are not faced with looking at the Collective Bargaining Agreement to determine whether it imposes some new duty upon the union -- rather it is conceded the union undertook to inspect and, thus, the issue is solely whether that inspection was negligently performed under traditional Idaho tort law." *115 Idaho 785, 787, 770 P. 2d 794, 796 (1989)*.

Placing this analysis of state law in the context of our precedents, the Idaho court explains:

"[T]he instant case is clearly distinguishable from Hechler in that here the state tort basis of the action was not abandoned, but has been pursued consistently both at the trial and appellate levels and the tort exists without reference to the collective bargaining agreement." *Id., at 787-788, 770 P. 2d, at 796-797*.

The court states further:

"[As in *Lingle v. Norge Division of Magic Chef, Inc., supra*], no interpretation of the collective-bargaining agreement is required to determine whether the union member of the inspection team committed a tort when he committed various acts and omissions such as failure to note the self-rescuers were stored in boxes with padlocks or that the activating valves of the oxygen-breathing-apparatuses were corroded shut. Rather, such

alleged acts of negligence are measured by state tort law." *Id.*, at 788, 770 P. 2d, at 797.

These statements reveal that the Idaho Supreme Court understood the federal pre-emption standards and interpreted state law not to implicate them. Because we have no basis for disputing the construction of state law by a state supreme court, see *Clemons v. Mississippi*, 494 U.S. 738, 747 [*379] *(1990)*, I submit that, at this stage of the proceedings, we must conclude that § 301 does not govern the respondents' claims.

The Court reaches a different conclusion because it doubts that the Idaho Supreme Court means what it seems to have said. The Court bases its view, to a large extent, on the Idaho court's expressed intention to "adhere to [its first] opinion as written." *115 Idaho, at 788, 770 P. 2d, at 797.* The first opinion says: "Because the union, pursuant to the provisions of the collective bargaining agreement, had contracted to inspect and in fact, inspected the mine, it owed the (minimal) duty to its members to exercise due care in inspecting and in reporting the findings of its inspection." *111 Idaho, at 638, 726 P. 2d, at 750.* The Court construes the remark to negate the unequivocal [***380] statements quoted above. I cannot accept this labored interpretation.

The Idaho Supreme Court's adherence to the first opinion does not implicate § 301 because it does not require interpretation of a collective-bargaining agreement. The first [**1915] opinion suggests that the respondents may refer to the collective-bargaining agreement. It does not eliminate the possibility, identified three times in the second opinion, that the respondents may prove the elements of *§ 323* without relying on the collective-bargaining agreement. Even the Union concedes:

"After Hechler, as we understand matters, both plaintiffs and the Idaho court would locate the source of the union's duty to inspect [in a non-negligent manner] in the union's action of accompanying company and state inspectors on inspections of the mine, and not in any contractual agreement by the union to inspect." Brief for Petitioner 27-28.

The Court, thus, reads too much into the last sentence of the Idaho Supreme Court's second opinion.

I see no reason not to allow this case to go forward with a simple mandate: The respondents may press their state claims so long as they do not rest upon the collective-bargaining [*380] agreement. To the extent that any misunderstanding might exist, this approach would preserve all federal interests. If the Idaho Supreme Court, after a trial on the merits, were to uphold a verdict resting on the Union's obligations under the collective-bargaining agreement, we could reverse its decision. But for now we must take the case as the Idaho Supreme Court has given it to us. According to the second opinion, the respondents may prove the elements of *§ 323* without relying on the Union's contractual duties.

The Court also rules against the respondents because it surmises that *§ 323* has no general applicability. The Court assumes that only union members could recover from the Union for its negligence in inspecting the mine and that union members could not recover from anyone else for comparable negligence. See ante at 370-371. I agree that a State cannot circumvent our decisions in Lingle, Hechler, and Allis-Chalmers, by the mere "relabeling" as a tort claim an action that in law is based upon the collective-bargaining process. *Allis-Chalmers, 471 U.S., at 211.* We must have the ultimate responsibility for deciding whether a state law depends on a collective-bargaining agreement for the purposes of § 301. In this case, however, I see no indication that the tort theory pressed by the respondents has the limited application presumed by the Court.

The Idaho Supreme Court did not invent, for the purposes of this case, the theory underlying the respondents' claims. As Cardozo put it: "It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." *Glanzer v. Shepard, 233 N.Y. 236, 239, 135 N.E. 275, 276 (1922). Restatement § 323*, upon which the Idaho Court relies, embodies this principle and long has guided the interpretation of Idaho tort law. See, e.g., *Steiner Corp. v. American District Telegraph, 106 Idaho 787, 791, 683 P. 2d 435, 439 (1984)* (fire alarm [***381] failure); *S.H. Kress & Co. v. Godman, 95 Idaho 614, 616, 515 P. 2d 561, 563 (1973)* (boiler explosion); [*381] *Fagundes v. State, 116 Idaho 173, 176, 774 P. 2d 343, 346 (App. 1989)* (helicopter crash); *Carroll v. United Steelworkers of America, 107 Idaho 717, 723, 692 P. 2d 361, 367 (1984)* (Bistline, J., dissenting) (machinery accident). The Court has identified no basis for its assumption that *§ 323* has a narrower scope than its plain language and these cases indicate. I thus would not find pre-emption on the mere supposition that the Union's duty runs only to the union members.

II

The Union also argues that the duty of fair representation immunizes it from liability under *§ 323*. Allowing the States to impose tort liability on labor organizations, it contends, would upset the balance of rights and duties that federal law has struck between unions and their members. I disagree because nothing in the NLRA supports the Union's position.

[**1916] Section 9(a) of the NLRA, *29 U.S.C. § 159(a)*, grants a duly elected union the exclusive author-

ity to represent all employees in a collective-bargaining unit. We have reasoned:

"The fair interpretation of the statutory language is that the organization chosen to represent a craft is chosen to represent all its members, the majority as well as the minority, and it is to act for and not against those whom it represents. It is a principle of general application that the exercise of a granted power to act in behalf of others involves the assumption toward them of a duty to exercise the power in their interest and behalf, and that such a grant of power will not be deemed to dispense with all duty toward those from whom it is exercised unless so expressed." *Steele v. Louisville & Nashville R. Co.*, 323 U.S. 192, 202 (1944) (footnote omitted) (interpretation of § 2(a) of the Railway Labor Act, 45 U.S.C. § 152 (1982 ed.), adopted for § 9(a) of the NLRA in *Ford Motor Co. v. Huffman*, 345 U.S. 330, 337 (1953)).

[*382] As a result, we have read § 9(a) to establish a duty of fair representation requiring a union "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967).

Although we have inferred that Congress intended to impose a duty of fair representation in § 9(a), I see no justification for the further conclusion that Congress desired to grant unions an immunity from all state tort law. Nothing about a union's status as the exclusive representative of a bargaining unit creates a need to exempt it from general duties to exercise due care to avoid injuring others. At least to some extent, therefore, I would conclude that Congress "by silence indicate[d] a purpose to let state regulation be imposed." *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 104 (1963).

Our decision in *Farmer v. Carpenters*, 430 U.S. 290 (1977), confirms this view. [***382] Farmer held that the NLRA did not pre-empt a union member's action against his union for intentional infliction of emotional distress. See *id.*, at 305. The union member complained that his union ridiculed him in public and refused to refer jobs to him in accordance with hiring hall rules. See *id.*, at 293. In analyzing this claim, we ruled that the NLRA's pre-emption of state tort law depends on two factors: "the state interests in regulating the conduct in question and the potential for interference with the federal regulatory scheme." *Id.*, at 297. Both of these factors militated against pre-emption in Farmer. Noting that "our cases consistently have recognized the historic state interest in 'such traditionally local matters as public safety and order,'" *id.*, at 299 (quoting *Allen-Bradley Local v. Wisconsin Employment Relations Bd.*, 315 U.S. 740, 749 (1942)), we ruled that the tort law addressed proper matters of state concern. We further observed that, although the tort liability for intentional infliction of emotional distress might interfere with the federal prohibition against discrimination by a [*383] union, that "potential for interference is insufficient to counterbalance the legitimate and substantial interest of the State in protecting its citizens." 430 U.S., at 304.

The Farmer analysis reveals that Idaho may hold the union liable for negligence in inspecting the mine. The strength and legitimacy of the State's interests in mine safety stand beyond question; the Union's failure to exercise due care, according to the allegations, caused or contributed to the deaths of 91 Idaho miners. Allowing this case to proceed to trial, moreover, would pose little threat to the federal regulatory scheme. [**1917] State courts long have held unions liable for personal injuries under state law. See, e.g., *DiLuzio v. United Electrical, Radio, and Machine Workers of America*, 386 Mass. 314, 318, 435 N.E. 2d 1027, 1030 (1982) (assault at workplace); *Brawner v. Sanders*, 244 Ore. 302, 307, 417 P. 2d 1009, 1012 (1966) (in banc) (personal injuries); *Marshall v. International Longshoremen's and Warehousemen's Union*, 57 Cal. 2d 781, 787, 371 P. 2d 987, 991 (1962) (stumble in union hall parking lot); *Inglis v. Operating Engineers Local Union No. 12*, 58 Cal. 2d 269, 270, 373 P. 2d 467, 468 (1962) (assault at union meeting); *Hulahan v. Sheehan*, 522 S.W. 2d 134, 139-141 (Mo. App. 1975) (slip and fall on union hall stairs). The Union presents no argument that this long-standing practice has interfered with federal labor regulation. Indeed, as the Court itself holds, nothing in the federal statutory scheme addresses the Union's conduct or provides redress for the injuries that it may have produced. See ante, at 373-375.

The Union's position also deviates from the well-established position of the courts of appeals. These courts have found pre-emption by the duty of fair representation in two situations. First, the courts have said that the duty of fair representation pre-empts state duties that depend on a collective-bargaining agreement or on the union's status as the exclusive collective bargaining agent. See, e.g., *Richardson v. United Steelworkers of America*, 864 F. 2d 1162, [*384] 1165-1167 (CA5 1989); *Condon v. Local* [***383] *2944, United Steelworkers of America*, 683 F. 2d 590, 595 (CA1 1982). As noted above, however, the Union's duties in this case do not stem from a contract or from its status as a union. Second, other courts have found the federal duty of fair representation to supplant equivalent state-law duties. See, e.g., *Jones v. Truck Drivers Local Union No. 299*, 838 F. 2d 856, 861 (CA6 1988) (sex discrimination); *Maynard v. Revere Copper Products*, 773 F. 2d 733, 735 (CA6 1985) (handicapped discrimination); *Peterson v.*

*Air Line Pilots Assn., International, 759 F. 2d 1161, 1170 (CA4 1985)* (blacklisting). In this case, state law differs from federal law in that the duty of fair representation does not address the conduct in question. The Union, as a result, has shown no support for its contention that the duty of fair representation pre-empts the Idaho tort law. For these reasons, I dissent.

**REFERENCES**

*48 Am Jur 2d, Labor and Labor Relations 406-408; 48A Am Jur 2d, Labor and Labor Relations 1950, 1963*

22 Federal Procedure, L Ed, Labor and Employment 52:948, 52:949

*29 USCS 185(a)*

RIA Employment Coordinator LR-44,501, LR-44,501.1, LR-44,593, LR-44,598, LR-44,600, LR-44,857

US L Ed Digest, Commerce 129.3; Labor 46

Index to Annotations, Labor and Employment; Preemption

Annotation References:

State court jurisdiction as pre-empted by National Labor Relations Act as amended (*29 USCS 141 et seq.*). *75 L Ed 2d 988*.

Effect of party's failure to cross-appeal on scope of appellate review as to contentions of party relating to judgment below. *63 L Ed 2d 911*.

Federal labor relations acts as affecting state court jurisdiction of suits between member of labor union and union. *10 L Ed 2d 1200*.

Constitutionality and construction of 301 of Labor Management Relations Act (*29 USCS 185(a)*) conferring jurisdiction on Federal District Courts in actions between employer and labor organization. *99 L Ed 529, 7 L Ed 2d 959, 16 L Ed 2d 1143*.

Liability of labor union for injury or death allegedly resulting from unsafe working conditions. 14 ALR4th 1161.

Right of individual employee to enforce collective labor agreement against employer. 18 ALR2d 352.

Page 1

LEXSEE 1982 U.S. DIST. LEXIS 15921

MAHONEY, et al. v. CHICAGO PNEUMATIC TOOL COMPANY, Defendant and Third-Party Plaintiff, and SHINANO, INC., Defendant v. TOWNSEND AND BOTTUM CONSTRUCTION CO., et al., and LOCAL 169 OF THE INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, BLACKSMITHS, IRON SHIPBUILDERS, FORGERS AND HELPERS, et al.

No. G80-349 CA6

United States District Court for the Western District of Michigan

1982 U.S. Dist. LEXIS 15921; 111 L.R.R.M. 2839; 96 Lab. Cas. (CCH) P14,017

July 27, 1982

**OPINION BY:** [*1] MILES

**OPINION**

MILES, Chief Judge: -- Plaintiff Robert Mahoney, an employee of Foster Wheeler Energy Corporation (Foster), was injured while working with a die grinder at a Consumers Power Company plant. The general contractor for the project was Townsend and Bottum Construction Company (Townsend). Plaintiff has sued Chicago Pneumatic Tool Company (Chicago), whose brand name grinding tool plaintiff was operating, and Shinano, Inc., the manufacturer of the tool.

Chicago has impleaded the followng parties: Townsend, the general contractor; Foster, plaintiff's employer; The International Brotherhood of Boiler-Makers, Blacksmiths, Iron Shipbuilders, Forgers and Helpers, and Local 169 of this Union, plaintiff's unions (Union); The Osborn Manufacturing Corporation, manufacturer of a device used in mounting the abrasive discs; Kasco Abrasives Company, the manufacturer of the abrasive discs, and Jackson Products Company, the manufacturer of the protective hood worn by the plaintiff at the time of the accident. Allegedly a disc on the grinder disintegrated and pieces of the disc pierced plaintiff's protective hood causing serious injury, including the loss of vision in one eye.

Defendant [*2] and third-party plaintiff Chicago has filed a motion for leave to amend the title of third-party defendant Jackson Products Company to Jackson Products Company, a department of Airco Welding Products, a division of Airco, Inc. This motion is hereby GRANTED.

Motions to dismiss have been filed by third-party defendant Union and third-party defendant Foster. A hearing was held on April 22, 1982.

Third-party Defendant Union has moved to dismiss the claim against the International Union and its Local 169 for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b) (6). the third-party claim in question must be liberally construed in favor of the third party plaintiff Chicago and the facts alleged therein must be taken as true. The court must deny the motion unless it appears beyond doubt that Chicago would not be entitled to relief under any set of facts which could be proved in support of its claim. *Davis H. Elliot Co. v. Caribbean Utilities Co.*, 513 F.2d 1176 (6th Cir. 1975).

The third-party plaintiff, Chicago, has alleged that plaintiff, as a member of the International Union and its Local 169, underwent a four-year apprenticeship program designed and [*3] administered at least in part by the Union and was certified as a journeyman boilermaker. Plaintiff's employment with Foster was arranged by the Union.

Chicago alleges that although the Union was involved in the training of the plaintiff in the trade of boilermaking and the subsequent supervision and monitoring of safety, the Union's negligence in so doing proximately caused or contributed to plaintiff's injury. Among the alleged failures of the Union were: the failure to train and test plaintiff properly and adequately, particularly in matters of safety, before certifying him as a journeyman boilermaker; failure to instruct the plaintiff regarding state regulations applicable to the use of grinding equipment; the failure to insure that Union supervisors were properly trained; and finally, the failure to ascertain

Case 1:07-cv-07375-JGK    Document 23    Filed 07/30/2008    Page 17 of 18

Page 2

1982 U.S. Dist. LEXIS 15921, *; 111 L.R.R.M. 2839;
96 Lab. Cas. (CCH) P14,017

whether the contractors offered adequate training, equipment and supervision.

The Union responds that it had no legal duty to insure the safety of the work environment or the adequacy of its members' training, equipment or supervision. Therefore, since it had no legal duty, it could not have been legally negligent. The Union, as the exclusive bargaining representative, [*4] has the responsibility and duty fairly to represent all the members of its bargaining unit. *Vaca v. Sipes, 386 U.S. 171, 64 LRRM 2369 (1967)*.

The third-paty plaintiff has alleged that the Union, through its involvement in the training and referral of its members and in the monitoring of workplace safety, assumed a role which carries responsibilities and duties beyond that of fair representation.

This court however does not agree. One of the primary functions of a union is working to improve workplace safety. Similarly, when a union seeks to improve the competence of its members so as to enhance their value to their employer, it is not thereby assuming a non-representational role with additional legal duties and responsibilities. [1]

> 1 A Michigan statute provides:
>
> The furnishing of, or failure to furnish, safety inspections or safety advisory services . . . pursuant to a contract providing for safety inspections or safety advisory services between the employer and . . . a union shall not subject . . . the union, its members or the members of its safety committee to third-party liability for damages for injury, death or loss resulting therefrom.
>
> *M.C.L. § 418.827(8)*. Therefore, even if the Union's involvement in this case with workplace safety was held to be an assumption of a non-representational role, the Union would be protected by statutory immunity.

[*5] The court finds that the Union's involvement with the setting up of an apprenticeship program with the employer and its efforts in the area of workplace safety are "inextricably intertwined and embodied in the union's duty of fair representation." *House v. Mine Safety Appliances Co., 417 F.Supp. 939, 945, 92 LRRM 3688 (D.Idaho 1976)*. The union's duty of fair representation is governed by federal law. *Vaca v. Sipes, 386 U.S. 171, 64 LRRM 2369*. "A breach of the statutory duty of fair representation occurs when the conduct of a union toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith." *Johnson v. General Drivers, Warehouse & H., Loc.U.No. 89, 488 F.2d 250, 251-52, 84 LRRM 2961 (6th Cir. 1973); Milstead v. International Bro. of Teamsters, Etc., 580 F.2d 232, 99 LRRM 2150 (6th Cir. 1978), appeal after remand 649 F.2d 935, 107 LRRM 2452, cert. denied, 102 S.Ct. 394, 108 LRRM 2656 (1981)*. Simple negligent conduct, as alleged in this case, which was not arbitrary, discriminatory, or in bad faith is insufficient to state a cause of action under federal labor law. See *Farmer v. ARA Services, Inc., 660 F.2d 1096, 108 LRRM 2145 (6th Cir. 1981; Dente* [*6] *v. International Org. of Masters, Mates & P., Loc. 90, 492 F.2d 10, 12, 84 LRRM 2982 (9th Cir.), cert. denied 417 U.S. 910, 86 LRRM 2428 (1974); Globig v. Johns-Manville Sales Co., 486 F.Supp. 735 (E.D.Wisc. 1980)*. "[O]rdinary negligence, without more, cannot establish a breach of the duty of fair representation." *Ruzicka v. General Motors Corp., 649 F.2d 1207, 1212, 107 LRRM 2726 (6th Cir. 1981); Harris v. Schwerman Trucking Co., 668 F.2d 1204, 109 LRRM 3135 (11th Cir. 1982)*. Therefore the Union's negligent actions and inactions of which Chicago complains fail to show a breach of the duty of fair representation.

Through negotiation, the Union has apparently gained the right of exclusive referral of workers, the right to establish an apprenticeship program and formulate standards for such program, and some voice in matters of workplace safety. However, as the Sixth circuit has explained:

> Collective bargaining agreements are literally agreements between unions and employers; the Union negotiators are intent on gaining the maximum power possible from management negotiators. Whether or not they choose to exercise all the power gained depends on a variety of situations relating [*7] to the overall employment situation in the industry. It would be a mistake of vast proportion to read every power granted the union by management as creating a corollary contract right in the employee as against the union. Such interpretation of collective bargaining agreements would simply deter unions from engaging in the unfettered give and take negotiation which lies at the heart of the collective bargaining agreement.

*Bryant v. International Union, U.M.W. Of America, 467 F.2d 1, 5, 81 LRRM 2401 (1972), cert. denied 410 U.S. 930, 82 LRRM 2597 (1973)*.

To hold the Union liable in this case because of its role in the establishment of an apprenticeship program for deficiencies in such program, particularly in the area of safety training, would simply discourage union efforts to promote workplace safety by increasing the competence of its members. This result would not serve the interests of the union members and is inconsistent with the goals of our national labor policy. See *Bryant, 467 F.2d at 5-6*.

Case 1:07-cv-07375-JGK    Document 23    Filed 07/30/2008    Page 18 of 18

Page 3

1982 U.S. Dist. LEXIS 15921, *; 111 L.R.R.M. 2839;
96 Lab. Cas. (CCH) P14,017

Since the Union has not assumed a role with concomitant duties beyond that of fair representation, the third-party complaint alleging that the Union has negligently performed [*8] such duties must be dismissed.

Third-party defendant Foster has also filed a motion to dismiss. This motion is based on the third-party plaintiff Chicago's alleged failure to set forth any grounds as a basis for recovery against Foster.

Chicago argues that in spite of Michigan workers compensation statute, a third-party can recover against an employer in a comparative negligence situation. However, Foster responds that any right of recovery which the third-party plaintiff has against the third-party defendants must necessarily derive from the plaintiff's right of recovery against the third-party defendant, and the plaintiff, as the employee, is barred from suit against his employer, the third-party defendant Foster, by the workman's compensation statute.

The third-party plaintiff has now amended its complaint against Foster and has now set forth grounds as a basis for recovery including the ground that under Michigan's comparative negligence statute, the liability of Chicago should be limited to its proportionate share of the damages as determined by the jury's allocation of fault. If Chicago is required to pay more than its proportionate share, it should be entitled to [*9] comparative indemnity/contribution from Foster to the extent that Foster has not paid its proportionate share.

*Douglas v. Robbins & Myers, Inc., 505 F.Supp. 765 (W.D.Mich. 1980)* involved a situation similar to the instant case. An employee, injured at work by a hoist which malfunctioned, sued the hoist manufacturer. The manufacturer, in what was characterized by the court as a third-party complaint against the employer, alleged that the doctrine of comparative negligence limited defendant's liability to a percentage of plaintiff's damages equal to the percentage of its own negligence; entitled defendant to a recovery under comparative indemnity and contribution theories; and required that the employer's lien on plaintiff's recovery be reduced by its percentage of fault. These arguments are virtually identical to the arguments made in the present case by defendant's counsel, a colleague of defendant's counsel in Douglas.

In Douglas, the court rejected the defendant's contention that joint and several liability has been eliminated in Michigan through the adoption of comparative negligence. The Douglas court cites *Weeks v. Feltner, 99 Mich. App. 392, 297 N.W.2d 678 (1980)*, as [*10] support for such rejection. The third-party plaintiff argues that the reasoning in Weeks, as adopted by other members of this court is incorrect. *Douglas, supra; McPike v. Die Casters Equipment, 504 F.Supp. 1056 (W.D. Mich. 1980)*. This court rejects the third-party plaintiff's contention.

The third-party plaintiff also argues that it is entitled to comparative indemnity. As the court in Douglas said: Michigan law provides for indemnity "only when the charging party can prove that it has been found liable to a third party, not because of any fault of its own, but because of its relationship to the party at fault from whom indemnification is sought" . . . There is nothing in the pleadings to suggest the presence of contractual indemnity, implied or expressed, and plaintiff's allegations against the principal defendant include no claims based on defendant being vicariously liable for [the employer's] negligence.

*Douglas, 505 F.Supp. at 769*, quoting *Jorae v. Clinton Crop Service, 465 F.Supp. 952, 957 (E.D.Mich. 1979)*.

As in Douglas, the third-party plaintiff also claims a right to contribution but since its right against the third-party defendant is derived from plaintiff's [*11] right against such third-party defendant, this would require a "finding that with respect to the plaintiff, the employer and third-party plaintiff are joint tortfeasors" and to hold that the employer has "some further liability to the plaintiff arising out of the injury . . . would violate the exclusive remedy provision of section 131 of the worker's compensation statute." *Douglas, 505 F.Supp. at 769*.

Finally, there is no reason to limit the amount which the employer or its workers compensation carrier can recover from the proceeds, if any, which the plaintiff may recover. "Reimbursement of the employer's insurance carrier . . . is an integral part of the workers' compensation balance. It has long been the law that the employer could recover a portion of a judgment in favor of the plaintiff, even where the employer may have been partly at fault." *Douglas, 505 F.Supp. at 770*.

Therefore, the third-party defendant Foster's motion to dismiss is hereby GRANTED.

In summary, third-party plaintiff Chicago's motion for leave to amend the title of the third-party defendant Jackson is hereby GRANTED. Third-party defendant Union's motion to dismiss is hereby GRANTED. Finally, the third-party [*12] defendant Foster's motion to dismiss is hereby GRANTED.

IT IS SO ORDERED.