**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
───────────────────────────────────

**WILLIAM FRIMPONG,**

               **Plaintiff,**        07 Civ. 7375 (JGK)

      - against -               **MEMORANDUM OPINION**
                                            **AND ORDER**

**1199SEIU UNITED HEALTHCARE WORKERS**
**EAST,**

               **Defendant.**
───────────────────────────────────

**JOHN G. KOELTL, District Judge:**

    The plaintiff, William Frimpong, filed this action asserting breach of the duty of fair representation and breach of contract against the defendant, 1199SEIU United Healthcare Workers East ("1199SEIU" or the "Union"). The action was originally filed in New York State Supreme Court, Bronx County, no earlier than July 20, 2007, the date of the Summons and Verified Complaint. The defendant removed the action to this Court pursuant to 28 U.S.C. §§ 1331 and 1441 because the dispute arises under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. The defendant now moves to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or alternatively for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, on the grounds that the duty of fair representation claim is time-barred and the breach of contract claim fails to state a claim

1

upon which relief can be granted.  For the reasons stated below, the motion for summary judgment is granted.

I

Both parties have submitted affidavits and the motion plainly placed the plaintiff on notice that the defendant sought summary judgment as an alternative to a motion to dismiss. Because both parties have submitted affidavits, and the Court has considered them, this Court will treat the motion as a motion for summary judgment.  See Rutigliano v. City of New York, No. 07 Civ. 4614, 2008 WL 110946, at *2 (S.D.N.Y. Jan. 2, 2008) ("[T]he essential inquiry [in converting a motion to dismiss to a summary judgment] is whether the non-movant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment . . . .") (quoting Krijn v. Pogue Simone Real Estate Co., 896 F.2d 687, 689 (2d Cir. 1990) (internal quotation marks omitted).

Summary judgment may not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Matican v. City of New York, 524 F.3d 151, 154 (2d Cir. 2008).  "[T]he trial court's task at the summary judgment motion stage of the

2

litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219, 1224 (2d Cir. 1994). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citation omitted); Gallo, 22 F.3d at 1223; see also Cardona v. Vidal, No. 06 Civ. 13680, 2008 WL 2856455, at *1 (S.D.N.Y. July 24, 2008).

II

The following facts are undisputed unless otherwise noted. The plaintiff was an employee of the Bronx-Lebanon Hospital (the "Hospital") from 1989 up to December 8, 2003. (Compl. ¶¶ 5; Morales Aff. ¶ 2.) The plaintiff alleges that he has been a member in good standing of the defendant Union since 1989. (Compl. ¶¶ 3-4.) In November 2003, the plaintiff was suspended from his position on the housekeeping staff at the Hospital as a result of an altercation with another employee and was ultimately terminated. (Compl. ¶¶ 7, 8; Morales Aff. ¶ 3.) With the assistance of the Union the plaintiff appealed his dismissal and a grievance hearing, at which he was represented by the Union, was held on March 10, 2004. (Compl. ¶ 13; Morales

3

Aff. ¶¶ 4-6 and Ex. B.) On March 11, 2004, the Union received a letter from the Hospital denying the plaintiff's grievance and stating that it would not reinstate the plaintiff. (Morales Aff. ¶ 6 and Ex. B.) The plaintiff subsequently requested, and the Union declined, to take the matter to arbitration. (Compl. ¶ 14; Morales Aff. ¶ 7.) Pursuant to the Union Constitution, the plaintiff appealed the Union's decision not to arbitrate his claim to the Chapter Hearings and Appeals Board ("Chapter Board"), which affirmed the Union's decision. (Compl. ¶ 14; Morales Aff. ¶¶ 8-11 and Ex. D.) The plaintiff then appealed the Chapter Board's decision to the Union Division Hearings and Appeals Board ("Division Board"), which has final authority to determine whether the Union must take a grievance to arbitration. (Compl. ¶ 14; Morales Aff. ¶ 13.) Following a hearing, the Division Board affirmed the Chapter Board's decision. (Compl. ¶ 14; Morales Aff. ¶¶ 16-17.) The plaintiff was notified of the final decision of the Union not to arbitrate by a letter dated June 16, 2005, which stated:

> After reviewing all information presented by you, it is concluded that there is virtually no likelihood of succeeding at arbitration. . . . [T]he decision in this matter is final. . . . We hope you understand that the union cannot effectively pursue the many meritorious grievances that arise if it is unduly burdened with cases that have no realistic prospect of success.

(Compl. ¶ 14; Morales Aff. Ex. F.)

4

The plaintiff asserts that, in October 2004, he was hired by Crowne Plaza Hotel in Manhattan, which is under the auspices of Union Local 6. (Compl. ¶ 20.) During the eleven-month period in which he was unemployed, the plaintiff alleges that he went to the Union office several times in search of job placement assistance, but that the Union's representatives informed him that they would not help him obtain other employment. (Compl. ¶¶ 2, 15-16.) The plaintiff claims that while he was unemployed the Union did not pay him benefits, offer him job counseling or training, or inform him of entities that performed these functions. (Id. ¶ 17.)

By a summons and verified complaint dated July 20, 2007, the plaintiff sued the Union in New York State Supreme Court, Bronx County. Liberally construed, the verified complaint alleged that the Union breached its duty of fair representation by failing to arbitrate the plaintiff's grievance and that the Union breached its contract with the plaintiff by failing to provide job counseling, assistance, and training, or notice of such services, as required by the "Union Manual Rules." (Compl. ¶¶ 14, 15-22.)

### III

The plaintiff's first claim is that the Union breached its duty of fair representation. The duty of fair representation is

5

a duty implied in the structure of the National Labor Relations Act ("NLRA").  DelCostello v. Int'l Broth. Teamsters, 462 U.S. 151, 164 (1983).  A union breaches its duty of fair representation only when its conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.  Air Line Pilots Ass'n Int'l v. O'Neill, 499 U.S. 65, 76 (1991); see also Barr v. United Parcel Serv., Inc., 868 F.2d 36, 43 (2d Cir. 1989); Gorham v. Transit Workers Union of America Local 100, No. 98 CIV. 313, 1999 WL 163567, at *3 (S.D.N.Y. Mar. 24, 1999).  The statute of limitations for a duty of fair representation claim is six months.  See DelCostello, 462 U.S. at 169-172 (1983); see also White v. White Rose Food, 128 F.3d 110, 114 (2d Cir. 1997); Joseph v. Terrence Cardinal Cooke Health Care Center, No. 07 Civ. 9325, 2008 WL 892508, at *3 (S.D.N.Y. Apr. 2, 2008).  It is well settled that the "the cause of action accrue[s] no later than the time when [the union members] knew or reasonably should have known that . . . a breach ha[s] occurred."  Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers, 378 F.3d 269, 278 (2d Cir. 2004) (alterations in original) (quoting Santos v. Dist. Council of New York City, 619 F.2d 963, 969 (2d Cir. 1980)).

   The plaintiff's claim that the Union breached its duty of fair representation by failing to take his claim to arbitration is plainly time barred.  On June 16, 2005, the Union informed

6

the plaintiff that the decision not to arbitrate his grievance was final and therefore no further action would be taken with respect to his termination.  At that time, the plaintiff knew or reasonably should have known that the Union had allegedly breached its duty of fair representation by refusing to arbitrate his grievance.  The plaintiff did not file this action until July 2007, twenty-five months later, which is outside the six-month statute of limitations.  The claim for a breach of the duty of fair representation by allegedly failing to pursue the plaintiff's grievance in an arbitration proceeding is therefore dismissed because it is time-barred.

**IV**

The plaintiff asserts a second claim against the Union for breach of contract, based on the Union's alleged failure to provide the plaintiff with "job counseling and assistance and training" in violation of the "Union Manual Rules."  (Compl. ¶¶ 17-22.)  The Union argues that this claim should also be viewed as a breach of the Union's duty of fair representation because it arises out of the Union's role as exclusive collective bargaining representative of the employees in the unit.  See Vaca v. Sipes, 386 U.S. 171, 177 (1967).  However, at oral argument on the motion the plaintiff clarified that he was not alleging a breach of the duty of fair representation, but was in

7

fact alleging a breach of the Collective Bargaining Agreement between the League of Voluntary Hospitals and Homes of New York and the Union (the "CBA").

### A

The CBA addresses the method and manner in which the members of the bargaining unit receive benefits, job training, and job assistance and placement services. (Morales Aff. Ex. A.) "Ordinarily, an employee's only claim against a union for violation of the terms of a collective bargaining agreement is for a violation of the duty of fair representation." McKoy v. Potter, No. 01 Civ. 1984, 2002 WL 31028691, at *11 (S.D.N.Y. Sept. 12, 2002) (citing United Steelworkers of Am. v. Rawson, 495 U.S. 362, 372-75 (1990)). However, pursuant to the third-party beneficiary doctrine, an employee may state a claim against a union for a violation of the collective bargaining agreement in limited circumstances. See Int'l Bhd. Of Elec. Workers v. Hechler, 481 U.S. 851, 861 and 864-865 (1987). To establish a claim against the union for breach of contract, the employee "must be able to point to language in the collective-bargaining agreement specifically indicating an intent to create obligations enforceable against the union by the individual employees." Rawson, 495 U.S. at 374; see, e.g., Mahoney v. Chicago Pneumatic, No. G80-349, 1982 WL 2010, at *2 (W.D.Mich.

8

July 27, 1982) (holding that the Union had not "assumed a role which carries responsibilities and duties beyond that of fair representation" through its involvement in setting up an apprenticeship program for members and in the monitoring of workplace safety but rather they were "inextricably intertwined and embodied in the union's duty of fair representation") (internal citations omitted).

Here, the plaintiff's only specific allegation is that the Union's failure to provide job search assistance breached Article VI of the CBA.  Article VI states, in relevant part, that:

> The Joint Employment Service . . . will be the sole source of referrals for all 1199 bargaining unit jobs for a seven (7) day period. This service will include referrals of agency and per diem workers.  A priority consideration for employment will be given to qualified referrals.  In emergency situations or cases where qualified agency or per diem workers are not available, the Employer may hire without going through the Joint Employment Service.  Disputes will be subject to review by the Contract Interpretation and Policy Committee . . . .  The Employment Placement Service shall maintain a computerized bank of prospective employees from all sources, and shall maintain a validation process by which employees' prior work performance, licensure and certification are verified.

(Morales Aff. Ex. A., at 14-15.)  The language in Article VI does not create an obligation enforceable against the Union by individual employees.  The provision creates obligations on the part of the employer toward the Union.  The provision is silent

9

with respect to the Union's obligation to assist employees with job search and placement. Thus, it is clear that any duty the Union might have to assist its employees in this regard is "inextricably intertwined and embodied in the union's duty of fair representation." Mahoney, 1982 WL 2010, at *2; see also Rawson, 495 U.S. at 374 ("Nothing in the [CBA] suggests that it creates rights directly enforceable by the individual employees against the Union . . . [the CBA], consists entirely of agreements between the Union and the employer and enforceable only by them."); Bryant v. Int'l Union, U.M.W. of Am., 467 F.2d 1, 5 (6th Cir. 1972) ("It would be a mistake of vast proportion to read every power granted the union by management as creating a corollary contract right in the employee as against the union."). Therefore, to the extent that the plaintiff is alleging a breach of contract claim based on the Union's violation of Article VI, the claim is legally insufficient.

The plaintiff next argues that he was wrongfully denied job training and benefits in violation of the CBA. However, he has failed to identify the specific language that allegedly creates such an obligation.[1] Instead, the plaintiff appeared to argue

---

[1] An examination of the CBA reveals that it is the 1199SEIU/League Job Security Fund (the "JSF") and the League/1199SEIU Training and Upgrading Fund (the "TUF", and collectively "the Funds") that provide employees in the bargaining unit access to training, skills upgrading, and loss of job benefits due to layoff. (See Morales Aff. Ex. A at 17-20, 25-39, 74-75, 82, 93.)

10

that Article II, Section 4 of the CBA gave rise to this duty. Article II, Section 4 states that "[A]n employee shall be considered a member of the Union in good standing if he/she tenders his/her periodic dues and initiation fee uniformly required as a condition of membership." (Morales Aff. Ex. A at 9.) Based on this language the plaintiff argues that he is entitled to whatever benefits are contained in the CBA, so long as the Union accepts his dues. However, even assuming that the plaintiff was a member in good standing, this argument fails to establish a claim for breach of contract. The Supreme Court has made it clear that courts should permit breach of contract claims only in cases where the language of the CBA clearly intended to confer an individual right on the Union member. See Rawson, 495 U.S. at 374-375 (noting that the duty of fair representation is in and of itself a purposefully limited check on the union because a "wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents"). These allegations plainly fail to state a claim for breach of contract.

---

Even if the plaintiff were eligible for benefits or assistance from the Funds it is the duty of the Fund Trustees, not the Union, to make decisions as to the allocation of benefits from the Funds. (Morales Aff. Ex A. at 14, 76.) The Funds are not defendants in this action. Moreover, the plaintiff has not even alleged that he applied for assistance from the Funds. (Yalkut Affirmation ¶ 6.)

The plaintiff's final argument is that the Union had a duty to inform him of the aforementioned benefits and services when he allegedly inquired about them at the Union office. Specifically, the plaintiff alleges that the Union breached this duty by failing to provide advice and information as to how and where he could receive training and job placement when he inquired. However, the plaintiff does not point to a source of this obligation in the CBA nor does he cite to any cases in support of his position that such a duty exists.[2] In the absence of specific language creating the alleged obligation, the plaintiff has failed to state a claim for breach of contract as a matter of law.

**B**

To the extent that this claim is viewed as a duty of fair representation claim it is plainly time-barred. The plaintiff states that his damage results from the Union's repeated refusal "to provide the plaintiff with the rights and assistance to which he was entitled." (Compl. ¶ 19.) The plaintiff then alleges that he secured a new job in October 2004, with a different union. He obtained this new job thirty-three months before he filed the present complaint. By October 2004 the

---

[2] For the same reasons set out above, Article II, Section 4 does not create this duty.

12

plaintiff knew what services the Union had or had not provided and made his own arrangements to obtain a new job.  Although the plaintiff alleges ongoing damage from the Union's "improper and unjustified refusal" to assist him in his job search, "a breach of duty by the union is apparent to the member at the time [the member] learns of the union action or inaction about which [the member] complains."  Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 165 (2d Cir. 1989); see also Demchik v. Gen. Motors Corp., 821 F.2d 102, 105 (2d Cir. 1987) ("[T]he statute of limitations begins to accrue . . . when the employee had actual or constructive notice that the union has breached its duty of fair representation.").  The fact that the Union allegedly told the plaintiff that "someone would contact [him]" is not sufficient to toll the statute of limitations with respect to his duty of fair representation claim.  See Wallace v. Seacrest Linen, No. 04 CV 6035, 2006 WL 2192777, at *8 (S.D.N.Y. Aug. 2, 2006) ("Suits filed after this six-month limit are time-barred, even if the union has been unresponsive to the plaintiff or the plaintiff holds out hopes for future representation.") (citing Cohen v. Flushing Hosp. & Med. Ctr., Local 1199, 68 F.3d 64, 68 (2d Cir. 1995)).

V

The Court has considered all of the parties' arguments. To the extent not specifically addressed, the arguments are either moot or without merit. For the reasons explained in this opinion, the defendant's motion for summary judgment (Docket No. 7) is **granted**. The Clerk is directed to enter judgment and to close this case.

SO ORDERED.

Dated:   New York, New York
         August 18, 2008

_____
John G. Koeltl
United States District Judge